**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| KELLY BLAND, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br>v.<br><br>OUR WORLD ENERGY LLC<br>AND<br>SUNSCI MEDIA LLC<br><br>                     Defendants. | Case No. 24-994<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Kelly Bland ("Ms. Bland"), by her undersigned counsel, for this class action complaint against Defendants Our World Energy LLC and SunSCI Media LLC as well as their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I. INTRODUCTION

1.     <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including her own.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed

nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II. PARTIES

5. Plaintiff Bland is an individual who resides in the Northern District of Texas.

6. Defendant Our World Energy LLC is an Arizona-based solar sales and installation company that sells its solar services regionally, including in Texas.

7. Defendant SunSCI Media LLC is a North Carolina LLC with its principal place of business in North Carolina. Our World, hired this defendant to place illegal telemarketing calls on its behalf.

## III. JURISDICTION AND VENUE

8. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9. Personal Jurisdiction: This Court has personal jurisdiction over Defendants. The Court has specific personal jurisdiction over Defendant Our World Energy LLC and SunSCI Media LLC because they directed their illegal conduct into Texas for the purposes of selling solar to Texans using illegal robocalls directed to Texas area codes.

10. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—were sent into this District.

## IV. FACTS

A. **The Enactment of the TCPA and its Regulations**

11. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

B.   **Unsolicited Telemarketing to Plaintiff**

16. Plaintiff Bland is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. Plaintiff Bland's telephone number, (817) XXX-XXXX, is a non-commercial telephone number that is used for residential purposes.

18. Plaintiff Bland uses the telephone number for her own personal, residential, and household needs and reasons.

19. Plaintiff Bland does not use the number for business reasons or business use.

4

20.  The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

21.  Plaintiff Bland's number has been on the National Do Not Call Registry for years since she registered it on the Registry prior to receiving the calls at issue.

22.  Despite that, on April 4, 2024, an individual rang Ms. Bland's doorbell seeking to solicit her for solar energy.

23.  Ms. Bland was out shopping and was not home at the time.

24.  The Plaintiff received a call around the same time from 817-600-4140 at 12:05j and a text message from the same number at 12:08j stating that an individual named "Hyrum" with "Our World Energy" was at the Plaintiff's house for a solar consultation.

25.  Neither the Plaintiff nor anyone residing at her household had scheduled or requested such an appointment.

26.  Thereafter, the Plaintiff received a missed call from 828-406-3717 at 12:10j.

27.  The Plaintiff received yet another call from the 828-406-3717 number, and the Plaintiff answered.

28.  During that call, Plaintiff spoke with an individual named "John Whitmore" who stated that he was calling from Defendant Our World Energy and stated that he wanted to seek the Plaintiff to come to her door and speak with the individual at her door about solar.

29.  Being that the Plaintiff had not requested such a visit, the Plaintiff asked for more information, to which Mr. Whitmore responded that another company, SunSCI Media, had indicated that the Plaintiff may be interested in solar panels and had requested Defendant Our World to pay her a visit.

30. The Plaintiff indicated that she was not interested and to place her number on Our World's Do Not Call list, but the calls nevertheless continued.

31. Specifically, on May 2, 2024, the Plaintiff received a call from an individual stating that they were calling from the illegally and fictitiously named "Common Green Solar" from the caller ID 585-304-0286 at 19:29j. The caller attempted to sell the Plaintiff solar panels, but otherwise refused to identify itself beyond this fake name.

32. It is believed and therefore averred that "Common Green Solar" is a fictitious name that is illegally used by defendant SunSCI to obfuscate its identity and the true source of the illegal calling conduct.

33. During that call, to identify the caller and the source of the illegal call and for no other reason, the Plaintiff provided the unique, fictitious name "Jazmine Sullivan."

34. The following day, May 3, 2024, the Plaintiff received a call from the caller ID 972-737-1329 from an individual named "Eric DeJohn" from Defendant Our World Energy, seeking to speak with "Jazmine Sullivan" about purchasing solar panels.

35. Further solidifying Defendant Our World as the source of the call on May 3, Mr. DeJohn provided Our World's website during the call and later sent the Plaintiff an email from his company email.

36. Mr. DeJohn called back on May 6, 2024 to follow up, and the Plaintiff stated that she was not interested and to stop calling.

37. Ms. Bland subsequently sent correspondence to both Our World and SunSCI in order to attempt to ascertain why she was called illegally.

38. Defendant Our World ignored her.

39. Defendant SunSCI hurriedly tried to pick the Plaintiff off by sending her a proposed, non-Rule 408 settlement offer of $1,500. Plaintiff, of course, did not accept this offer.

40. When the Plaintiff did not accept the offer, SunSci called the Plaintiff on June 10, 2024 from the caller ID 972-476-3998. During that call, which again started out by stating that the individual was "Daniel" from "Common Green Solar," quickly devolved into a vulgar call, with Daniel stating, "One of our experts will give you a call in thirty minutes, all right? . . . He will open your legs and call you in thirty minutes."

41. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

42. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

43. The FCC has instructed that sellers such as Our World may not avoid liability by outsourcing telemarketing to third parties, such as SunSCI:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

44. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

45. Our World is liable for telemarketing calls placed by SunSCI and transferred or sold to Our World and its agents to generate customers for Our World and its agents, including the Plaintiff.

46. Indeed, Our World's relationship with Defendant SunSCI contains numerous hallmarks of agency.

47. For example, prior to this suit, SunSCI attempted to act as agent on Our World's behalf by attempting to settle with Plaintiff for conduct also involving Our World.

48. The aforementioned vulgar call also demonstrate that Our World failed to supervise SunSCI or enforce its compliance with applicable laws and regulations.

49. Our World could also have eliminated the illegal conduct and risk of TCPA violations complained of herein by refraining using lead generator like SunSCI, but it did not.

50. Our World was interested in selling its products and services via door to door sales man, so it turned to lead generators like SunSCI that could make phone calls and conduct other forms of reconnaissance on potential customers, vet potential clients, and only sell them the interested ones.

51. To do so, Our World hired SunSCI to orchestrate an *en masse* telemarketing campaign.

52. Our World controlled the day-to-day activities of SunSCI by providing the specific criteria for the leads it would accept and required SunSCI to adhere to those criteria.

53. Defendants continued to market to Plaintiff, despite numerous indications both to Our World and SunSCI that she was not interested and did not want any further calls.

54. As such, Our World controlled the content of SunSCI's telemarketing.

55. Plaintiff's multiple requests not to be called should have been communicated both to Our World and SunSCI, and vice-versa, but were not.

56. Finally, Our World could have terminated SunSCI.

57. It did not.

58. By virtue of identifying the leads that they would accept and directing the conduct and other indicia of the calls at issue described above, Our World directed SunSCI and the content of the communications that SunSCI would use in their calling.

59. A reasonable seller like Our World whose telemarketers and agents are making calls would investigate into the reasons why their lead vendors are sending their employees to houses of purportedly "interested" customers, particularly when such customers are not home.

60. A reasonable seller like Our World whose telemarketers and agents are making calls would also investigate into the reasons why their agents and telemarketers would be calling numbers on the National Do Not Call Registry and, moreover, individuals who already stated that they no longer wished to receive calls from Our World or SunSCI.

61. Indeed, Our World could have investigated if the leads it received were genuine or if they were on the National Do Not Call Registry.

62. It did not.

63. Our World hired SunSCI without a proper investigation and did not terminate them when they were informed of SunSCI's illegal calling conduct.

64. As such, they knowingly ratified SunSCI's conduct.

65. Our World also ratified SunSCI's conduct because, with knowledge of Plaintiff's complaints against Our World and do not call requests, they accepted the Plaintiff's lead a second time and continued to market to Plaintiff.

66. Our World accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to her after she made clear she did not want the calls.

67. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

68. Plaintiff's privacy has been violated by the above-described telemarketing calls.

69. Plaintiff never provided her consent or requested these calls.

70. The aforementioned calls to the Plaintiff were unwanted.

71. The calls were non-consentual encounters.

72. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

### V.   CLASS ACTION ALLEGATIONS

73. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class (the "Class") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31

days, (2) but who received more than one telemarketing call from or on behalf of SunSCI or Our World, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

74. Excluded from the Class are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

75. The Class, as defined above, is identifiable through telephone records and telephone number databases.

76. The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

77. Individual joinder of these persons is impracticable.

78. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

79. Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the class members.

80. Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

81. This class action complaint seeks injunctive relief and money damages.

82. There are numerous questions of law and fact common to Plaintiffs and members of the Class. These common questions of law and fact include, but are not limited to, the following:

      a.      Whether Our World is vicariously liable for the actions of SunSCI, and the corresponding liability as between them;

      b.      whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

      c.      whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls; and

      d.      whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

83. Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

84. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class, she will fairly and adequately protect the interests of the Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

85. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

86. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The

interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

87. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

88. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

89. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

90. Defendants' violations were negligent, willful, or knowing.

91. As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

92. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E. An award to Plaintiff and the Class of damages, as allowed by law; and

F. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.     DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this October 16, 2024.

>*/s/ Andrew Roman Perrong*
>Andrew Roman Perrong, Esq.
>Perrong Law LLC
>2657 Mount Carmel Avenue
>Glenside, Pennsylvania 19038
>Phone: 215-225-5529 (CALL-LAW)
>Facsimile: 888-329-0305
>a@perronglaw.com
>
>*/s/ Anthony Paronich*
>Anthony Paronich
>Email:  anthony@paronichlaw.com
>PARONICH LAW, P.C.
>350 Lincoln Street, Suite 2400
>Hingham, MA 02043
>Telephone:  (617) 485-0018
>Facsimile:  (508) 318-8100
>
>
>*Attorneys for Plaintiff and the Proposed Class*