IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| KELLY BLAND, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br>v.<br><br>OUR WORLD ENERGY LLC<br>AND<br>EDJ ENTERPRISES INC.<br><br>                      Defendants. | Case No. 4:24-cv-00994-P<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Kelly Bland ("Ms. Bland"), by her undersigned counsel, for this class action complaint against Defendants Our World Energy LLC and EDJ Enterprises Inc. as well as their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I. INTRODUCTION

1. <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including her own.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed

nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.    PARTIES

5. Plaintiff Bland is an individual who resides in the Northern District of Texas.

6. Defendant Our World Energy LLC is an Arizona-based solar sales and installation company that sells its solar services regionally through companies like Defendant EDJ, including in Texas.

7. Defendant EDJ Enterprises Inc. is a Florida Corporation with its principal place of business in Florida. Our World hired this defendant to place at least some of the illegal telemarketing calls complained herein on its behalf and also hired it to conduct marketing activities in a specific Territory, which included Texas.

## III.    JURISDICTION AND VENUE

8. <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9. <u>Personal Jurisdiction</u>: This Court has personal jurisdiction over Defendants. The Court has specific personal jurisdiction over Defendant Our World Energy LLC and EDJ Enterprises Inc. because they directed their illegal conduct into Texas for the purposes of selling solar to Texans using illegal robocalls directed to Texas area codes. Furthermore, the Court has specific personal jurisdiction over Defendant Our World Energy LLC because it entered into a contract with EDJ to market over a designated territory, which included Texas. The claims herein arise out of that same conduct and relationship between Our World Energy and EDJ.

10. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—were sent into this District.

### IV.     FACTS

**A.     The Enactment of the TCPA and its Regulations**

11.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12.     Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.     Unsolicited Telemarketing to Plaintiff**

16.     Plaintiff Bland is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. Plaintiff Bland's telephone number, (817) XXX-XXXX, is a non-commercial telephone number that is used for residential purposes.

18. Plaintiff Bland uses the telephone number for her own personal, residential, and household needs and reasons.

19. Plaintiff Bland does not use the number for business reasons or business use.

20. The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

21. Plaintiff Bland's number has been on the National Do Not Call Registry for years since she registered it on the Registry prior to receiving the calls at issue.

22. Despite that, on April 4, 2024, an individual rang Ms. Bland's doorbell in Texas seeking to solicit her for solar energy.

23. Ms. Bland was out shopping in Texas and was not home at her house in Texas at the time.

24. The Plaintiff received a call around the same time from 817-600-4140 at 12:05j and a text message from the same number at 12:08j stating that an individual named "Hyrum" with "Our World Energy" was at the Plaintiff's house in Texas for a solar consultation.

25. This was further confirmed by a text message, identifying that "Hyrum," who upon information and belief, is employed by former Defendant SunSCI, confirmed that he was with the Defendant "Our world energy.":



26. Neither the Plaintiff nor anyone residing at her household in Texas had scheduled or requested such an appointment.

27. Thereafter, the Plaintiff received a missed call from 828-406-3717 at 12:10j.

28. The Plaintiff received yet another call from the 828-406-3717 number, and the Plaintiff answered.

29. During that call, Plaintiff spoke with an individual named "John Whitmore" who stated that he was calling from Defendant Our World Energy and stated that he wanted to seek the Plaintiff to come to her door and speak with the individual at her door about solar.

30. Being that the Plaintiff had not requested such a visit, the Plaintiff asked for more information, to which Mr. Whitmore responded that another company, SunSCI Media, had indicated that the Plaintiff may be interested in solar panels and had requested Defendant Our World to pay her a visit.

31. Upon information and belief, the aforementioned calls were placed by former Defendant SunSCI as part of its relationship with Our World Energy, specifically, one in which Our World hired SunSCI to conduct marketing efforts in a specific territory, which included Texas. Moreover, Mr. Whitmore is the owner of SunSCI.

32. The Plaintiff indicated to Mr. Whitmore that she was not interested and to place her number on Our World's Do Not Call list, but the calls nevertheless continued.

33. Specifically, on May 2, 2024, the Plaintiff received a call from an individual stating that they were calling from the illegally and fictitiously named "Common Green Solar" from the caller ID 585-304-0286 at 19:29j. The caller attempted to sell the Plaintiff solar panels, but otherwise refused to identify itself beyond this fake name.

34. It is believed and therefore averred that "Common Green Solar" is a fictitious name that is illegally used by defendant EDJ as part of its relationship with Our World Energy to obfuscate its identity and the true source of the illegal calling conduct.

35. During that call, to identify the caller and the source of the illegal call and for no other reason, the Plaintiff provided the unique, fictitious name "Jazmine Sullivan."

36. The following day, May 3, 2024, the Plaintiff received a call from the caller ID 972-737-1329 from an individual named "Eric DeJohn," who claimed to be from Defendant Our World Energy, seeking to speak with "Jazmine Sullivan" about purchasing solar panels.

37. The 972- area code is a Texas Area Code, further demonstrating express aiming of EDJ's and Our World's conduct into Texas.

38. In reality, Eric DeJohn is and was the owner of Defendant EDJ, which, upon information and belief, stands for EricDeJohn. However, Mr. DeJohn stated that he was from Defendant Our World Energy.

39. Further solidifying Defendant Our World as the source of the call on May 3, which was placed through Defendant EDJ, Mr. DeJohn provided Our World's website during the call and later sent the Plaintiff an email from his company email including Our World's name, which is the same email that Mr. DeJohn used in his communications with Our World:





> **Rebehka Lopez**
>
> **From:** Alicia O'Neill <aoneill@ourworldenergy.com>
> **Sent:** Tuesday, December 31, 2024 12:28 PM
> **To:** eric.worldenergy@gmail.com
> **Cc:** OWE Legal
> **Subject:** Cease and Desist Notice
> **Attachments:** Legal - Summons - Kelly Bland.pdf
>
> Dear Mr. DeJohn,
>
> Attached to this email, please find a lawsuit filed by a woman in Texas named Kelly Bland against Our World Energy. In the lawsuit, Ms. Bland alleges that you initiated phone calls to her in violation of the Telephone Consumer Protection Act (see paragraphs 34-36).

40. Mr. DeJohn called back on May 6, 2024 to follow up, and the Plaintiff stated that she was not interested and to stop calling.

41. Ms. Bland subsequently sent correspondence to both Our World and SunSCI in order to attempt to ascertain why she was called illegally.

42. Defendant Our World ignored her.

43. Former defendant SunSCI hurriedly tried to pick the Plaintiff off by sending her a proposed, non-Rule 408 settlement offer of $1,500. Plaintiff, of course, did not accept this offer.

44. When the Plaintiff did not accept the offer, either Our World, SunSCI, or EDJ called the Plaintiff on June 10, 2024 from the caller ID 972-476-3998, which is a Texas area code, demonstrating further aiming into Texas. During that call, which again started out by stating that the individual was "Daniel" from "Common Green Solar," quickly devolved into a vulgar call, with Daniel stating, "One of our experts will give you a call in thirty minutes, all right? . . . He will open your legs and call you in thirty minutes."

45. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for

9

any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

46. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

47. The FCC has instructed that sellers such as Our World may not avoid liability by outsourcing telemarketing and sales and installation activities to third parties, such as EDJ and former Defendant SunSCI:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

48. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

49. Our World is liable for telemarketing calls placed by EDJ and transferred or sold to Our World and its agents to generate customers for Our World and its agents, including the Plaintiff.

50. Indeed, Our World's agreement with Defendant EDJ contains numerous hallmarks of agency.

51. It is true that Our World's contract with EDJ characterizes EDJ as an independent contractor. But this is not the end of the classical agency analysis. However, in assessing whether or not an agency relationship exists, courts will look beyond such provisions and consider the substance of the relationship.

52. Numerous facts here allow the Court to look beyond this provision and to the substance of Our World's relationship with EDJ to determine that Our World exercised substantial control over EDJ so as to render EDJ an agent of Our World.

53. The Agreement characterizes EDJ as a "Sub Dealer," and makes reference to Our World's licensure and EDJ's desire to use the "services and experience of OWE in the installation of electrical systems for residential solar systems [EDJ] sells."

54. In so doing, Defendant Our World expressly contemplated that EDJ would conduct business in Texas using Defendant Our World's licenses.

55. Defendant Our World exercised substantial control over Defendant EDJ, including requiring EDJ to maintain insurance and licenses of its own, and required EDJ to meet monthly with Our World's manager "to discuss the progression of Vendor's growth."

56. Our World also reserved the right to ensure that EDJ complied with all applicable requirements of the Agreement, including by withholding and setting off payments to EDJ.

57. EDJ also conveyed a "first priority security interest" (i.e. an enforceable lien under the Uniform Commercial Code) in all the "leads, prospective customers, [and] customer list," (i.e. results of the illegal telemarketing efforts complained of herein), among others, for any

business it generated. In other words, EDJ generated business *exclusively* for Our World, a relationship that has the hallmarks of a captive agency.

58. Not only did Our World have a first priority interest in any customers EDJ generated, Our World also required EDJ to prepare and maintain books and records of documentation concerning all the customers EDJ marketed and sold to, and produce them upon demand, including in response to Our World's compliance reviews and demands.

59. Our World also reserved the right to monitor EDJ's telephone marketing efforts, including to "observe, inspect, shadow, or otherwise review" such efforts and conduct. It also reserved the right to drug test EDJ's employees. And, demonstrating the importance of such reviews, Our World considered failure to cooperate in such reviews to be an instance of a default under the Agreement.

60. Our World's agreement with EDJ also had a "When we ask you to jump, you must say 'How high?'" clause, requiring EDJ to comply with "any and all instructions and requests of OWE or its Representatives."

61. Moreover, Our World attached an entire Code of Conduct and Marketing Requirements to its agreement and EDJ agreed to comply in all respects with all of Our World's control, directives, and terms therein.

62. The aforementioned vulgar call also demonstrates that Our World failed to supervise EDJ or enforce its compliance with applicable laws and regulations.

63. Moreover, Our World failed to terminate EDJ when notified of EDJ's illegal conduct.

64. Our World could also have eliminated the illegal conduct and risk of TCPA violations complained of herein by refraining from using vendors like EDJ, but it did not.

65. Our World was interested in selling its products and services via door to door sales man and illegal telephone solicitation, so it turned to lead vendors and sellers like EDJ that could make phone calls and conduct other forms of reconnaissance on potential customers, vet potential clients, sell the interested ones Our World's services, which Our World would then install and pay vendors like EDJ a portion of that sale as a commission.

66. As explained above, Our World exercised substantial control over and controlled the day-to-day activities of EDJ.

67. Defendants continued to market to Plaintiff, despite numerous indications both to Our World, SunSCI, and EDJ that she was not interested and did not want any further calls.

68. As such, Our World controlled the content of EDJ's telemarketing.

69. Plaintiff's multiple requests not to be called should have been communicated both to Our World, SunSCI, and EDJ, and vice-versa, but were not.

70. In fact, Defendants continued such conduct to make harassing and vulgar calls to Plaintiff.

71. Finally, Our World could have terminated EDJ.

72. It did not.

73. In fact, all it did was ask EDJ to knock it off and confirm how EDJ obtained the Plaintiff's number, to which EDJ did not even appear to respond.

74. Even so, Our World kept EDJ on as its vendor and merely told EDJ that it was "investigating" EDJ.

75. By virtue of identifying the leads that they would accept and directing the conduct and other indicia of the calls at issue described above, Our World directed EDJ and the content of the communications that EDJ would use in their calling.

76. A reasonable seller like Our World whose telemarketers and agents are making calls would investigate into the reasons why their lead vendors are sending their employees to houses of purportedly "interested" customers, particularly when such customers are not home.

77. A reasonable seller like Our World whose telemarketers and agents are making calls would also investigate into the reasons why their agents and telemarketers would be calling numbers on the National Do Not Call Registry and, moreover, individuals who already stated that they no longer wished to receive calls from Our World.

78. Indeed, Our World could have investigated if the leads it received were genuine or if they were on the National Do Not Call Registry.

79. It attempted to but appears to have accepted the lack of a response on the part of EDJ as a response.

80. Our World hired EDJ without a proper investigation and did not terminate them when they were informed of EDJ's illegal calling conduct.

81. As such, they knowingly ratified EDJ's conduct.

82. Our World also ratified EDJ's conduct because, with knowledge of Plaintiff's complaints against Our World and do not call requests, they accepted the Plaintiff's lead a second time from EDJ and continued to market to Plaintiff.

83. Our World also ratified EDJ's conduct because, knowing that EDJ was involved in the conduct in this very lawsuit, only then informed EDJ, and accepted the lack of response on EDJ's part as an acceptable response and investigation, and did not even terminate EDJ, as it did with SunSCI.

84. Our World accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to her after she made clear she did not want the calls.

85. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

86. Plaintiff's privacy has been violated by the above-described telemarketing calls.

87. Plaintiff never provided her consent or requested these calls.

88. The aforementioned calls to the Plaintiff were unwanted.

89. The calls were non-consensual encounters.

90. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V.    CLASS ACTION ALLEGATIONS

91. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class (the "Class") defined as follows:

> **<u>National Do Not Call Registry Class</u>**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of EDJ or Our World, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

92. Excluded from the Class are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

93. The Class, as defined above, is identifiable through telephone records and telephone number databases.

94. The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

95. Individual joinder of these persons is impracticable.

96. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

97. Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the class members.

98. Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

99. This class action complaint seeks injunctive relief and money damages.

100. There are numerous questions of law and fact common to Plaintiffs and members of the Class. These common questions of law and fact include, but are not limited to, the following:

    a. Whether Our World is vicariously liable for the actions of EDJ, and the corresponding liability as between them;

    b. whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

    c.  whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls; and

    d.  whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

  101. Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

  102. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class, she will fairly and adequately protect the interests of the Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

  103. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

  104. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple

individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

105. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

106. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

107. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

108. Defendants' violations were negligent, willful, or knowing.

109. As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

110. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E. An award to Plaintiff and the Class of damages, as allowed by law; and

F. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.        DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this January 28, 2025.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

/s/ Anthony Paronich
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100


*Attorneys for Plaintiff and the Proposed Class*