## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **KELLY BLAND, individually and on behalf** | § | |
| **of all others similarly situated,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 4:24-cv-00994-P** |
| | § | |
| **OUR WORLD ENERGY, LLC, and** | | |
| **EDJ ENTERPRISES, INC.,** | § | |
| | § | |
| *Defendants* | § | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
## FIRST AMENDED CLASS ACTION COMPLAINT

Respectfully submitted,

*/s/Caleb B. Bulls*
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Caleb B. Bulls
State Bar No. 24082749
caleb.bulls@kellyhart.com
**KELLY HART & HALLMAN, LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Facsimile: (817) 878-9280

*Attorneys for Defendant Our World Energy*

## TABLE OF CONTENTS

I.  INTRODUCTION ..............................................................................................1

II.  RELEVANT FACTUAL BACKGROUND........................................................3

    A.  *OWE is a Solar Company that Contracts with Independent Contractors to Perform Lead Generation and Sales Development Services.*...................................3

    B.  *OWE Enters Into Independent Contractor Agreements with EDJ and SunSci.* .......5

    C.  *Plaintiff Allegedly Receives Calls that Violate the TCPA.* ........................................6

III.  APPLICABLE LEGAL STANDARD ...............................................................7

    A.  *Personal Jurisdiction (Federal Rule of Civil Procedure 12(b)(2)).* .........................7

    B.  *Failure to State a Claim (Federal Rule of Civil Procedure 12(b)(6)).* ....................8

IV.  ARGUMENT & AUTHORITIES ......................................................................9

    A.  *The Court Cannot Exercise Specific Jurisdiction Over OWE.* ................................9

        1.  OWE Did Not Initiate Any of the Complained-of Phone Calls................. 9

        2.  EDJ's and SunSci's Contacts Cannot be Imputed to OWE. .................... 10

    B.  *Plaintiff Has Failed to State a Claim Upon Which Relief Can be Granted.* ...........19

V.  CONCLUSION & PRAYER FOR RELIEF....................................................25

# TABLE OF AUTHORITIES

**Cases**

*Beanal v. Freeport-McMoran, Inc.*,
    197 F.3d 161, 164 (5th Cir. 1999) .......................................................................... 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 558, 127 S.Ct. 1955, 1966 (2007) ................................................... 8

*Bell v. VPSI, Inc.*,
    205 S.W.3d 708, 714 (Tex. App.--Fort Worth 2006, no pet.) ............................... 16

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*,
    582 U.S. 255, 262 (2017) ....................................................................................... 8

*Callier v. SunPath, Ltd.*,
    No. EP-20-CV-00106-FM, 2020 WL 10285659, at *1 (W.D. Tex. 2020) ........................... 13

*Callier v. Wide Merchant Investment, Inc.*,
    No. EP--22-CV-00123-FM, 671 F.Supp.3d 736, 740 (W.D. Tex. 2023) ..................... passim

*Canales v. Michaux*,
    No. 1:18-CV-507-RP, 2019 WL 13153212, at *4 (W.D. Tex. 2019) ............................. 10, 16

*Castro v. Hermanos Morales Ranch*,
    281 F.3d 1279, 2001 WL 1692465, at *3 (5th Cir. 2001) ..................................... 15

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496, 498 (5th Cir. 2000) ...................................................................... 24

*Conn Appliances, Inc. v. Williams*,
    936 F.3d 345, 347 (5th Cir. 2019) ........................................................................ 8

*Cunningham v. Lifestyles Dev., LLC*,
    No. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039, at *3 (E.D. Tex. 2019) ............... 9, 10

*Cunningham v. TechStorm, LLC*,
    2017 WL 721079, at *2 (N.D. Tex. 2017) ......................................................... 23

*Emtel, Inc. v. Lipidlabs, Inc.*,
    583 F.Supp.2d 811, 838 (S.D. Tex. 2008)........................................................... 15

*Freidman v. Massage Envy Franchising, LLC*,
    No. 3:12-cv-02962-L-RBB, 2013 WL 3026641, at *3-*4 (S.D. Cal. 2013)........................ 21

*Garcia-Celestino v. Ruiz Harvesting, Inc.*,
    898 F.3d 1110, 1122 (11th Cir. 2018) .................................................................. 16

*Goodyear Dunlop Tires Opers., S.A. v. Brown*,
  564 U.S. 915, 919 (2011) ................................................................................. 7

*Heinze v. Tesco Corp.*,
  971 F.3d 475, 479 (5th Cir. 2020) ................................................................... 8

*Hennighan v. Insphere Ins. Solutions, Inc.*,
  38 F.Supp.3d 1083, 1102 (N.D. Cal. 2014), *aff'd*, 650 Fed. Appx. 500 (9th Cir. 2016) ...... 15

*Horton Nat'l Republican Senatorial Committee*,
  No. 3:22-CV-1000-G-BK, 2023 WL 372066, at *4-*5 (N.D. Tex. 2023)........................... 23

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  753 F.3d 521, 530 (5th Cir. 2014) ................................................................... 11

*Katz v. Caliber Home Loans, Inc.*,
  No. 3:23-CV-0145-S, 2023 WL 5311488, at *3 (N.D. Tex. 2023) ..................................... 21

*Koch Ref'g v. Chapa*,
  11 S.W.3d 153, 155 (Tex. 1999) ..................................................................... 15

*Naiman v. Freedom Forever, LLC*,
   No. 19-cv-00256-JSC, 2019 WL 1790471, at *4 (N.D. Cal. 2019)................................... 21

*Naimnan v. TranzVia, LLC*,
  No. 17-cv-4813-PJH, 2017 WL 5992123, at *13 (N.D. Cal. 2016)................................... 19

*Parrish v. Premier Directional Drilling, L.P.*,
  917 F.3d 369, 382 (5th Cir. 2019) ................................................................... 16

*White v. U.S. Corrections, LLC*,
  996 F.3d 302, 307 (5th Cir. 2021) ................................................................. 2, 8

*Wilson v. Belin*,
  20 F.3d 644, 649 (5th Cir. 1994) ................................................................... 8

*Winters v. Grand Caribbean Cruises, Inc.*,
  2021 WL 511217, at *6 (D. Ariz. 2021) ............................................................. 12

*Worsham v. Direct Energy Servs., LLC*,
  No. SAG-20-00193, 2010 WL 948819, *6 (D. Md. 2021) ................................................. 12

## **Rules**

FED. R. CIV. P. 12(b)(2)................................................................................. 1

FED. R. CIV. P. 12(b)(6)................................................................................. 2

Pursuant to Rules 12(b)(2) and12(b)(6) of the Federal Rules of Civil Procedure, Defendant Our World Energy, LLC ("OWE") hereby submits this *Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint*.  In support, OWE respectfully shows the Court as follows:

## I.
## INTRODUCTION

1.      Through her *First Amended Complaint* (the "Complaint"), Plaintiff Kelly Bland ("Plaintiff") contends that OWE and co-Defendant EDJ Enterprises, Inc. ("EDJ") violated the Telephone Consumer Protection Act (the "TCPA").[1]  [*See generally* Doc. 16].  According to Plaintiff, Defendants violated the TCPA by initiating solicitation phone calls to Plaintiff even though she had listed herself on the federal do-not-call registry.  [*See id.*].  Plaintiff has alleged that OWE should be held directly liable for placing the calls and/or vicariously liable as EDJ's alleged principal (for calls EDJ supposedly initiated).  [*See id.*].  Plaintiff's claim is without merit, and Plaintiff's Complaint should be dismissed for two reasons.

2.      First, Plaintiff's Complaint should be dismissed because the Court does not have personal jurisdiction over OWE.  *See* FED. R. CIV. P. 12(b)(2).  OWE is a limited liability company formed and headquartered in the State of Arizona.  [App., p. 1, ¶ 2].  While OWE transacts some business in Texas (i.e., installs solar panels on Texas residences), there is no relationship between Plaintiff's claims and the limited business that OWE has transacted in Texas.  Specifically, none of the phone numbers that Plaintiff identified in her Complaint belong to OWE or are otherwise operated by OWE.  [*Id.*, pp. 4, ¶ 19].  Without any tie between Plaintiff's claims and OWE's contacts with the State of Texas, OWE does not have the "minimum contacts" necessary for this

---

[1] Plaintiff added EDJ as a co-defendant through her First Amended Complaint.  [Doc. 16].  Originally, Plaintiff alleged that OWE should be vicariously liable for a separate entity's, SunSci Media, LLC's ("SunSci"), alleged actions.  [Doc. 1].  Plaintiff, however, failed to effectuate service on SunSci, and the Court dismissed the claims that Plaintiff asserted against SunSci.  [Doc. 14].  Thus, Plaintiff's First Amended Complaint effectively substitutes EDJ for SunSci.  [*Compare* Doc. 1 [asserting claims against SunSci] *with* Doc. 16 (asserting claims against EDJ)].

Court to exercise personal jurisdiction over it. *See, e.g., Callier v. Wide Merchant Investment, Inc.*, No. EP-22-CV-00123-FM, 671 F.Supp.3d 736, 740 (W.D. Tex. 2023).

3.     Plaintiff's attempt to establish personal jurisdiction over OWE by imputing EDJ's contacts with Texas to OWE fares no better. It is well-established law that a third-party's contacts cannot be imputed to a defendant unless there is a principal-agent relationship between the defendant and the third-party. *Id.*; *see also Heller v. Marriott Vacations Worldwide Corp.*, EP-22-CV-00398-FM-MAT, 2023 WL 6702696, at *4 (W.D. Tex. 2023) ("[I]f vicarious liability or an agency relationship cannot be established, then the offending contacts by the third party cannot support jurisdiction."). Here, there is no principal-agent relationship that could support the imposition of vicarious liability. The agreement between OWE and EDJ expressly stated that EDJ was an independent contractor (i.e., not OWE's agent) [App., p. 6], and OWE did not take any action that could lead a third-party, like Plaintiff, to have believed that EDJ was OWE's agent. [*See id.*, p. 2, ¶¶ 5-8]. Moreover, OWE did not take any actions to ratify EDJ's actions; instead, OWE sent a cease-and-desist e-mail to EDJ once it learned about Plaintiff's allegations. [*Id.*, p. 51]. This is simply not a situation where OWE can be vicariously liable for EDJ's actions such that the complained-of phone calls could be imputed to OWE in connection with a personal jurisdiction analysis. *See id.* The Court lacks personal jurisdiction for those reasons.

4.     Second, Plaintiff's Complaint should be dismissed because Plaintiff has failed to state a claim under the TCPA. *See* FED. R. CIV. P. 12(b)(6). It is axiomatic that a court does not have to "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" when it performs a Rule 12(b)(6) analysis. *White v. U.S. Corrections, LLC*. 996 F.3d 302, 307 (5th Cir. 2021). Here, Plaintiff's allegations that "support" its TCPA claim are exactly that: conclusory allegations and legal conclusions that do not satisfy the Rule 12(b)(6) standard or otherwise demonstrate that OWE could be held liable under the TCPA. *See id.*; *see also Hunsinger*

*v. Dynata, LLC*, No. 3:22-cv-00136-G-BT, 2012 WL 2377481, at *5 (N.D. Tex. 2023). Without well-pleaded, non-conclusory allegations that plausibly establish a claim under the TCPA, Plaintiff's Complaint must be dismissed. *See* FED. R. CIV. P. 12(b)(6).

5.      For these reasons, and those further set forth herein, OWE respectfully requests that the Court grant OWE's Motion and dismiss the Complaint for (i) lack of personal jurisdiction pursuant to Rule 12(b)(2); or alternatively (ii) failure to state a claim under Rule 12(b)(6).

## II.
## RELEVANT FACTUAL BACKGROUND

### A.      *OWE is a Solar Company that Contracts with Independent Contractors to Perform Lead Generation and Sales Development Services.*

6.      OWE is a limited liability company formed and headquartered in the State of Arizona. [Doc. 16, ¶ 6; App., p. 1, ¶ 2]. Its business consists of installing state-of-the-art, locally-manufactured solar panels that are designed to save end consumers money. [App., p. 1, ¶ 3]. For business development purposes, OWE contracts with independent contractors to perform lead generation and sales development-type services. [*Id.*].

7.      Whenever OWE contracts with independent contractors for lead generation and/or sales development services, it enters into a "Sales Service Agreement for Independent Contractor" or "Sub Dealer Agreement" (collectively, the "Independent Contractor Agreements") with the independent contractor. [App., pp. 5-50 (Sub Dealer Agreement), pp. 69-99 (Sales Service Agreement for Independent Contractor)]. The Independent Contractor Agreements contain several provisions that are relevant to the issues at hand, each of which establishes the relationship between OWE and the third-party as an independent contractor relationship (i.e., not a principal-agent or employer-employee relationship).

8.      First, the Independent Contractor Agreements explicitly state that the contractor's "status under this Agreement is that of an independent Vendor and shall in no way be deemed to be any other status, including (without limitation) that of an agent or employee of OWE . . .":

> (c)    **Status as Independent Contractor.**  Nothing contained in this Agreement shall be construed as creating a joint venture, partnership, employment or franchise relationship between the Parties, and no Party shall have the right, power or authority to create any obligations or duty, express or implied, on behalf of the other Party.  Vendor's status under this Agreement is that of an independent Vendor and shall in no way be deemed to be any other status, including (without limitation) that of an agent or employee of OWE or its Affiliates. Vendor shall not refer to itself, hold itself out as, or knowingly permit any person to believe Vendor is anything other than an independent Vendor, including (without limitation): agent, Affiliate, employee, partner, or franchisee of OWE.    OWE may, in its sole and absolute discretion, (i) contract for services with other parties even though they may be similar or identical to the Services hereunder, inside or outside the Territory; (ii) sell the Products through any other person; and (iii) offer pricing, terms, conditions, or other benefits to other persons different from or superior to those offered to Vendor hereunder.

[App., p. 6 (underlining added), p. 70 (Section 2(d))].  Section 2 also prohibits the independent contractor, like EDJ, from "refer[ring] to itself, hold[ing] itself out as, or knowingly permit[ting] any person to believe Vendor is anything other than an independent Vendor, . . . ."  [*Id.*].

9.      Second, in addition to defining the parties' relationship, the Independent Contractor Agreements also take steps to ensure that, to the extent the independent contractor engages in telemarketing to develop leads or sales, the independent contractor complies with federal and state laws that regulate telemarketing, including but not limited to compliance with do-not-call laws:

> (w)    **Telephone and Text Messaging Communications.**  To the extent that Vendor engages in any activity involving telephone or text messaging communication with a Consumer, Vendor agrees that it will first obtain the express written consent of each consumer before it initiates any communication over or through the telephone or text messaging.  Vendor agrees that it will strictly comply with all applicable laws, including Federal and state do-not-call laws. Vendor will strictly comply with OWE's written policies and procedures regarding the foregoing. Vendor will never use an automatic telephone dialing system to call or send a text message to any Consumer unless first approved in a writing by OWE.

[*Id.*, p. 12, p. 76].

10.    Third, the Independent Contractor Agreements were based on initial one-year terms with automatic one-year renewals.  Either party (i.e, OWE or the independent contractor) could terminate the agreement for any reason by providing third days' written notice to the other party. [App., p. 13-14 (Section 7(a)) ("Either Party may terminate this Agreement for convenience upon thirty (30) calendar days' prior written notice to the other Party."), pp. 77 (same)].

11.    Fourth, the Independent Contractor Agreements require the independent contractor to bear whatever expenses it incurs in connection with developing leads or sales.  [*Id.*, p. 18 (Section 8(i)) ("Unless otherwise provided herein or agreed to in writing by OWE, Vendor will be responsible for all costs related to the Services, Work, equipment, uniforms, training, project management, call centers, customer care, information technology systems, software, and all other of its obligations under this Agreement."), p. 80 (Section 8(f))].

12.    And fifth, the parties agreed that any dispute for breach of the Independent Contractor Agreements would be governed by Arizona law and had to be "brought and tried exclusively in the federal or state courts located in the State of Arizona, . . ." [*Id.*, p. 18-19 (Section 8 (p, r), pp. 82 (Section 8 (p-q)].  To the extent that the independent contractors successfully generate a lead with a potential customer, OWE and the customer then enter into their own agreement that defines and governs the agreement and relationship between OWE and the customer.  [*Id.*, p. 2, ¶ 6].

**B.    *OWE Enters Into Independent Contractor Agreements with EDJ and SunSci.***

13.    In the Spring of 2024, OWE entered into a *Sub Dealer Agreement* with EDJ (the "EDJ Agreement") and a *Sales Service Agreement for Independent Contractor* with SunSci (the "SunSci Agreement").  [*Id.*, pp. 5-50, pp. 60-99].  The EDJ Agreement and the SunSci Agreement contained the standard terms that OWE requires in its agreements with independent contractors, including the provisions that (i) state that the relationship between the parties is an independent

contractor relationship and not that of a principal-agent or employer-employee; (ii) require strict compliance "with all applicable laws, including Federal and state do-not-call laws"; (iii) allow either party to terminate the agreement on thirty days' notice; (iv) require the independent contractor to bear its own expenses; and (v) require any lawsuit that is related to the agreements to be brought in Arizona.  [*See id.*].

## C.    *Plaintiff Allegedly Receives Calls that Violate the TCPA.*

14.    Beginning in April 2024, Plaintiff alleges that she received a series of phone call solicitations that asked Plaintiff if she was interested in purchasing solar paneling systems for her residence.  [Doc. 16, ¶¶ 22-45].  According to Plaintiff, these calls violated the TCPA because she registered herself with the federal do-not-call registry.  [*Id.*, ¶ 21].  In total, Plaintiff alleges that she received six (6) different calls that violated the TCPA:

1)    On April 4, 2024, an individual rang Plaintiff's doorbell. That same day, Plaintiff received a phone call (from the phone number 817-600-4140) at 12:05 p.m. and a text message from the same number at 12:08 p.m. "stating that an individual named 'Hyrum' with 'Our World Energy' was at the Plaintiff's house for a solar consultation." [Doc. 16, ¶¶ 22-25]. This call shall be referred to as "Call No. 1."

2)    That same day, Plaintiff received a missed call from the phone number 828-406-3717 at 12:10 p.m. and "received yet another call from the 828-406-3717 number, . . . During that call, Plaintiff spoke with an individual named 'John Whitmore' who stated that he was calling from Defendant Our World Energy and stated that he wanted to seek the Plaintiff to come to her door and speak with the individual at her door about solar." [*Id.*, ¶¶ 27-29]. After Plaintiff asked for more information, Mr. Whitmore allegedly told Plaintiff that SunSci had indicated that Plaintiff "may be interested in solar panels and had requested Defendant Our World to pay her a visit." [*Id.*, ¶ 30]. This call shall be referred to as "Call No. 2."

3)    On May 2, 2024, Plaintiff "received a call from an individual stating that they were calling from the illegally and fictitiously named 'Common Green Solar' from the caller ID 585-304-0286" at 7:29 p.m. [*Id.*, ¶ 33]. According to Plaintiff, "Common Green Solar" is a fictitious name that EDJ uses. Additionally, Plaintiff alleges that she identified herself with the fictitious name "Jazmine Sullivan." [*Id.*, ¶ 33-34]. This call shall be referred to as "Call No. 3."

4) The following day, on May 3, 2024, "Plaintiff received a call from the caller ID 972-737-1329 from an individual named 'Eric DeJohn' from Defendant Our World Energy, seeking to speak with 'Jazmine Sullivan' about purchasing solar panels." During that call, Mr. DeJohn allegedly provided Our World Energy's website to Plaintiff and sent "Plaintiff an email from his company email." [*Id.*, ¶¶ 36-39]. This call shall be referred to as "Call No. 4."

5) Mr. DeJohn called Plaintiff back on May 6, 2024, whereupon Plaintiff stated that she was not interested in purchasing solar panels. [*Id.*, ¶ 40]. This call shall be referred to as "Call No. 5."

6) On June 10, 2024, Plaintiff received a call "from the caller ID 972-476-3998." [*Id.*, ¶ 45]. During that call, an individual named "Daniel" from "Common Green Solar" stated "One of our experts will give you a call in thirty minutes, all right? . . . He will open your legs and call you in thirty minutes." [*Id.*]. This call shall be referred to as "Call No. 6."

As alleged by Plaintiff, OWE should be directly liable for initiating these phone calls and/or vicariously liable as EDJ's and/or SunSci's principal to the extent they initiated the phone calls.

15.    Plaintiff's allegations are not sufficient to establish personal jurisdiction over OWE or to plausibly state a claim under the TCPA. As a result, OWE respectfully maintains that the Court cannot exercise personal jurisdiction over OWE and that Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(2). Alternatively, if the Court finds that it can exercise personal jurisdiction (it should not), OWE maintains that Plaintiff's conclusory and unsupported allegations fail to allege a claim under the TCPA and that the Complaint should be dismissed pursuant to Rule 12(b)(6).

### III.
### APPLICABLE LEGAL STANDARD

**A.    *Personal Jurisdiction (Federal Rule of Civil Procedure 12(b)(2)).***

16.    There are two different theories under which a court can exercise jurisdiction over a nonresident defendant: specific jurisdiction and general jurisdiction. *Goodyear Dunlop Tires Opers., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Here, Plaintiff alleges that the Court has specific jurisdiction over OWE. [Doc. 16, ¶ 9]. To demonstrate specific jurisdiction, the plaintiff must

show that the defendant had "minimum contacts with Texas--meaning that [it] purposely availed [itself] of Texas's benefits and protections--and that exercising jurisdiction will not offend traditional notions of fair play and substantial justice." *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019).

17.    To establish minimum contacts, "the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (emphasis added). "In other words, there must be an affiliation between the forum and underlying controversy, principally, an activity or occurrence that *takes place* in the forum State . . . ." *Id.* (emphasis added). It is the plaintiff's burden to establish the existence of minimum contacts such that the exercise of personal jurisdiction is authorized. *E.g. Wilson v. Belin*, 20 F.3d 644, 649 (5th Cir. 1994). If the plaintiff cannot satisfy its burden, jurisdiction cannot be exercised and the case must be dismissed. *See id.*

**B.    Failure to State a Claim (Federal Rule of Civil Procedure 12(b)(6)).**

18.    Federal Rule of Civil Procedure 12(b)(6) exists to quickly dispose of meritless claims before the parties and Court engage in lengthy and expensive litigation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S.Ct. 1955, 1966 (2007). While a court must accept a plaintiff's well-pleaded allegations as true when considering a motion to dismiss, it is not required to "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *White v. U.S. Corrections, LLC*, 996 F.3d 302, 306-07 (5th Cir. 2021) (quoting *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020)). Applying these principles, a district court may dismiss a complaint under Rule 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

# IV.
## ARGUMENT & AUTHORITIES

### A.   *The Court Cannot Exercise Specific Jurisdiction Over OWE.*

19.    Plaintiff's Complaint should be dismissed for lack of jurisdiction for two reasons. First, OWE did not initiate any contact with the State of Texas that has *any* relationship to Plaintiff's claim, *i.e.*, it did not initiate any of the complained-of phone calls.  Second, the jurisdictional evidence before the Court demonstrates that there is no agency relationship between OWE and its independent contractors.  Without a principal-agent relationship, there is no basis to impose vicarious liability on OWE, and there are no contacts to impute to OWE to establish personal jurisdiction.

### 1.   **OWE Did Not Initiate Any of the Complained-of Phone Calls.**

20.    Initially, Plaintiff cannot demonstrate that the Court may exercise personal jurisdiction under a direct theory of liability pursuant to the TCPA.  "Under the TCPA, direct liability is found when an entity initiates a telephone call." *Hunsinger*, 2023 WL 2377481, at *5. "Initiating" a telephone call means that the entity "takes steps necessary to physically place a telephone call." *Cunningham v. Lifestyles Dev., LLC*, No. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039, at *3 (E.D. Tex. 2019).

21.    In support of her claim, Plaintiff alleges that she received six different phone calls that purportedly violated the TCPA.  [Doc. 16, ¶¶ 22-45].  In her Complaint, Plaintiff identified the phone number that placed each of the subject phone calls.  [*Id.*].

22.    Contrary to Plaintiff's allegations, OWE did not have any involvement in connection with the complained-of solicitations.  Indeed, OWE does not own or operate any of the phone numbers that Plaintiff identified in her First Amended Complaint.  [App., pp. 4, ¶ 19]. Moreover, OWE does not employ Eric DeJohn or John Whitmore (the two individuals that Plaintiff

specifically identified in her First Amended Complaint as having some affiliation with OWE). [*Id.*, pp. 2-3, ¶ 8, ¶ 16]. Mr. DeJohn and Mr. Whitmore were similarly not authorized to conduct business on OWE's behalf. [*Id.*]. Instead, Mr. DeJohn's and Mr. Whitmore's respective entities were independent contractors. [*Id.*]. In short, OWE did not initiate any of the phone calls that were allegedly made to Plaintiff in violation of the TCPA.

23.    Because OWE did not initiate any of the phone calls that Plaintiff has complained about, it cannot be directly liable under the TCPA. *See Callier*, 671 F.Supp.3d at 743; *Hunsinger*, 2023 WL 2377491, at *5-*6; *Cunningham*, 2019 WL 4282039, at *3. Stated differently, because OWE did not initiate any of the phone calls, it did not have any contact with the State of Texas that has any relationship to Plaintiff's claim. *See id.* The Court lacks personal jurisdiction over OWE for that reason.

## 2.    EDJ's and SunSci's Contacts Cannot be Imputed to OWE.

24.    Any attempt to establish personal jurisdiction over OWE by imputing EDJ's or SunSci's alleged contacts (or any other contractor's) with the State of Texas fares no better. Specifically, Texas courts have repeatedly held that a third-party's contacts with a foreign state cannot be imputed to the defendant unless the plaintiff can allege and prove the existence of any agency relationship. *Heller*, 2023 WL 6702696, at *4 ("[I]f vicarious liability or an agent relationship cannot be established, then the offending contacts by the third party cannot support jurisdiction."); *see Canales v. Michaux*, No. 1:18-CV-507-RP, 2019 WL 13153212, at *4 (W.D. Tex. 2019). In considering liability under the TCPA, courts have identified three theories under which a defendant can be vicariously liable: (i) actual authority; (ii) apparent authority; and (iii) ratification. None of the three theories support the exercise of personal jurisdiction over OWE in this case.

i.    There is No Actual Authority.

25.    "An agency relationship exists when one person or entity 'manifests assent' to another person or entity 'that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to the act." *Heller*, 2023 WL 6702696, at *5. "For TCPA cases, the relevant inquiry is whether the principal controlled-- or had the right to control--the 'manner and means of the telemarketing campaign.'" *Id.* To establish an agency relationship, the level of control "must be high and very significant." *Id.*; *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 530 (5th Cir. 2014).

26.    Here, contrary to Plaintiff's allegations, the relationships between OWE, on the one hand, and EDJ and SunSci, on the other, are independent contractor relationships. The evidence before the Court confirms the same.

27.    To begin with, the Independent Contractor Agreements explicitly state that the relationship between the parties is an independent contractor relationship and *not* a principal-agent or employer-employee relationship. [App., p. 6, p. 70]. Specifically, Section 2 provides that "Vendor's status under this Agreement is that of an independent Vendor and shall in no way be deemed to be any other status, including (without limitation) that of an agent or employee of OWE . . . ." [*Id.*]. This section also states that "no Party shall have the right, power, or authority to create any obligations or duty, express or implied, on behalf of the other Party." [*Id.*]. In other words, OWE did not have the right to control the manner in which its contractors performed any services or to otherwise act on its contractor's behalf. [*See id.*].

28.    The Independent Contractor Agreements also prohibited any independent contractor from "refer]ring to itself, hold[ing] itself out as, or knowingly permit[ting] any person to believe that Vendor is anything other than an independent Vendor, including (without

limitation): agent, Affiliate, employee, partner, or franchisee of OWE." [*Id.*]. An exhibit to the Independent Contractor Agreements (entitled "Marketing Requirements") further required the independent contractors to take steps to disclose to prospective customers the type of relationship between OWE and the independent contractor:

> 1.   **RELATIONSHIP WITH OWE.** At all times throughout the Term, Vendor shall disclose in a clear and conspicuous manner the independent Vendor relationship between OWE and Vendor in a manner consistent with the terms of this Agreement. Vendor shall ensure that each Consumer and Customer understands the independent Vendor relationships between Vendor and OWE.

[*Id.*, pp. 43-44].

29.    Consistent with the nature of their relationship, the Independent Contractor Agreements also made each respective independent contractor responsible "for all costs related to the Services, Work, equipment, uniforms, training, project management, call centers, customer care, information technology systems, [and] software, . . . ." [*Id.*, p. 18 (Section 8(i), p. 80 (Section 8(f))]. Also relevant, the Independent Contractor Agreements had an original term for one year, to be renewed automatically on additional one-year terms. [*Id.*, pp. 13-14 (Section 7(a)), p. 77 (same)].

30.    Federal courts in Texas have analyzed similar relationships and contractual provisions within the TCPA context to determine that a relationship between contracting parties was an independent contractor relationship and not a principal-agent relationship.[2] Without a

---

[2] Courts in other jurisdictions have also held that there is not an agency relationship in similar circumstances. *Worsham v. Direct Energy Servs., LLC*, No. SAG-20-00193, 2010 WL 948819, *6 (D. Md. 2021) (holding that no agency relationship existed even though callers stated they were "calling on behalf of" of the alleged principal when agreements identified alleged agent as independent contractor and required TCPA compliance); *Winters v. Grand Caribbean Cruises, Inc.*, 2021 WL 511217, at *6 (D. Ariz. 2021) (dismissing case for lack of personal jurisdiction for lack of jurisdiction whenever plaintiff failed to establish an agency relationship, even when some callers "identified themselves as representatives" of the defendant).

principal-agent relationship, the courts held that personal jurisdiction could not be exercised over the non-resident defendants.

31.    For example, in *Callier v. Wide Merchant Investment, Inc.*, the plaintiff (Callier) alleged that he received dozens of unsolicited phone calls in violation of the TCPA. 671 F.Supp.3d 736, 740 (W.D. Tex. 2023).  In connection with his claims, Callier sought to hold a non-resident defendant (WMI) liable for placing the phone calls by alleging that the calls were placed by WMI's agent.  *Id.*  In response, WMI argued that there was no principal-agent relationship that supported the exercise of personal jurisdiction.  *Id.*  After analyzing the relationship between WMI and its alleged agent, the court agreed with WMI.  *Id.*  In support of that determination, the court considered that:

- WMI did not exert any control over the means by which the contractor was to obtain leads and referrals;

- WMI did not have any knowledge of calls that were placed by the contractor and that WMI had not received any complaints that the contractor had violated the TCPA;

- WMI requested the contractor to stop placing calls to the plaintiff once it learned about the allegations;

- The at-issue contract referred to the contractor as an "independent marketing and referral agent";

- The contract prohibited the contractor from using intellectual property that belonged to the alleged principal;

- The contract was to automatically renew every year and could be terminated by either party; and

- Any expenses incurred by the contractor were the contractor's sole responsibility.

*Id.* at 744-45. Relying on these facts, the Western District concluded that it could not exercise personal jurisdiction over WMI, the non-resident defendant.

32.    Similarly, in *Callier v. SunPath, Ltd.*,, Callier alleged that two non-resident defendants (SunPath and Northcoast) could be vicariously liable under the TCPA after receiving

a series of telemarketing calls. No. EP-20-CV-00106-FM, 2020 WL 10285659, at *1 (W.D. Tex. 2020). In response, the defendants argued that a Texas court could not exercise personal jurisdiction over them because they did not place the phone calls and were not the principal of any entity that did. *Id.* at *3. In light of the evidence that the defendants submitted that established that they did not exert control over the entity that placed the calls, the district court ultimately held that the plaintiff's conclusory allegations that SunPath and Northcoast were the "direct beneficiaries of the illegal telemarketing calls" were not sufficient. *Id.* As a result, the court held that the plaintiff had "not met his pleading burden to establish personal jurisdiction" over the non-resident defendants.[3] *Id.* at *4.

33.     Here, Plaintiff's allegation that "Our World's agreement with Defendant EDJ contains numerous hallmarks of agency" is completely contradicted by the actual evidence. Instead, like *Callier* and other cases, the evidence shows that the relationships between OWE, EDJ and SunSci are independent contractor relationships, not principal-agent relationships:

- The EDJ Agreement and the SunSci Agreement specifically define EDJ and SunSci as independent contractors and not as agents or employees.  [App., p. 6, p. 70].

- The Independent Contractor Agreements explicitly state that the independent contractors, like EDJ and SunSci, do not have the right or authority to act on OWE's behalf.  [*Id.*].

- OWE does not maintain any control over which leads EDJ or SunSci pursue or over the process which EDJ or SunSci use to obtain leads or referrals.  [*See id.*; *see also* p. 2, ¶ 5].

- OWE did not have any knowledge that EDJ or SunSci had called any individuals on the federal do-not-call registry (the Independent Contractor Agreements prohibited the placement of any such calls).  [*Id.*, ¶ 9, pp. 3-4, ¶ 17].

- The Independent Contractor Agreements could be terminated by any party on thirty days' notice.  [*Id.*, pp. 13-14, p. 77].

---

[3] The court did permit limited jurisdictional discovery to provide the plaintiff an opportunity to explore the relationship between the non-resident defendants and the third-party marketing firm. *Id.* at *4.

- Under the Independent Contractor Agreements, EDJ and SunSci were responsible for any expenses they incurred.  [*Id.*, p.18, p. 80].

34.     At bottom, the Independent Contractor Agreements do not demonstrate that EDJ "shall act on [OWE's] behalf and subject to [OWE's] control."  *Heller*, 2023 WL 6702696, at *5. The EDJ Agreement does not require EDJ to exclusively work for OWE; it does not require EDJ to make a specific amount of phone calls to generate leads (or even make phone calls in the first place); it does not designate the amount of sales that EDJ had to generate; and it does not even dictate how EDJ had to generate leads.  This is simply not the type of situation where OWE had the right to control "the manner and the means of the telemarketing campaign" sufficient for the Court to impute EDJ's contacts to OWE.  *See id.*

35.     In an effort to overcome this evidence, the Complaint alleges that other provisions of the Independent Contractor Agreements purport to evidence a principal-agent relationship. However, none of the provisions that Plaintiff's Complaint relies upon creates a principal-agent relationship.  For example:

- Section 4(m): requiring EDJ to obtain its own insurance.  [Doc. 16, ¶ 55].  However, requiring a contractor to obtain its own insurance does not elevate a relationship from independent contractor to principal-agent.  *E.g., Emtel, Inc. v. Lipidlabs, Inc.*, 583 F.Supp.2d 811, 838 (S.D. Tex. 2008) ("Requiring physicians to purchase liability insurance . . . does not make the physicians the movants' agents so as to establish a basis for making the movants vicariously liable . . . .").

- Section 4(e): requiring EDJ to have its own licenses.  [*Id.*].  Contrary to Plaintiff's contention, a licensure "requirement suggests a distinct occupation," which is indicative of an independent contractor relationship.  *Hennighan v. Insphere Ins. Solutions, Inc.*, 38 F.Supp.3d 1083, 1102 (N.D. Cal. 2014), *aff'd*, 650 Fed. Appx. 500 (9th Cir. 2016).

- Section 2(b): monthly meeting requirement.  [*Id.*].  But a monthly meeting requirement does not make EDJ or SunSci an agent.  *Emtel*, 583 F.Supp.2d at 837 ("A right of control requires more than a general right . . . to inspect [the contractor's] progress or to receive reports, . . .") (citing *Koch Ref'g v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999)); *see also Castro v. Hermanos Morales Ranch*, 281 F.3d 1279, 2001 WL 1692465, at *3 (5th Cir. 2001).

- Plaintiff directs the Court to the EDJ Agreement's drug-testing provision. [*Id.*, ¶ 59]. This requirement similarly does not turn the relationship into a principal-agent relationship. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 382 (5th Cir. 2019) ("Nor were plaintiffs employees because of safety training and drug testing.").

- Code of Conduct: requiring EDJ to comply with laws and other basic requirements. [*Id.*, ¶ 61]. Requiring a contractor to comply with "basic parameters" does not turn it into an employee or agent. *Emtel*, 583 F.Supp.2d at 838 (summary judgment warranted even though contract set "basic parameters" for physicians to follow because such parameters did "not affect, much less control" how the physicians were to perform work); *see also Bell v. VPSI, Inc.*, 205 S.W.3d 708, 714 (Tex. App.--Fort Worth 2006, no pet.).

- Section 3(f): granting OWE a security interest. [*Id.*, ¶ 57]. However, whether or not an entity has "economic control" over a contractor however does not change the relationship into a principal-one. *See Garcia-Celestino v. Ruiz Harvesting, Inc.*, 898 F.3d 1110, 1122 (11th Cir. 2018) ("[C]ourts must focus on an entity's control over the manner and means of the agent's performance and the details of the work *and ignore mere economic control or control over the end result of the performance*.") (emphasis added).

As evidenced by the cited cases, none of those provisions create a principal-agent relationship.[4] Indeed, not a single one of these provisions grants OWE the right to control "the manner and means of [any] telemarketing campaign," as would be necessary to impute EDJ's contacts to OWE. *Heller*, 2023 WL 67029696, at *5.

36.     After applying the analysis the courts applied in *Callier*, *Canales*, *Heller* (and others), there is no basis for the Court to determine that EDJ or SunSci are OWE's agents. *Callier*, 671 F.Supp.3d at 743; *Canales*, 2019 WL 13153212, at *4; *Heller*, 2023 WL 6702696, at *7. Instead, EDJ and SunSci are (were) OWE's independent contractors. *See id.*  As a result, EDJ's and SunSci's alleged contacts with Plaintiff cannot be imputed to OWE, and the Court should not exercise personal jurisdiction over OWE. *See id.*

---

[4] Moreover, OWE did not take steps to fulfill any rights it had under these provisions. For example, OWE did not foreclose on any security interest that was granted in the EDJ Agreement; OWE did not hold monthly meetings with EDJ; OWE never requested to inspect EDJ's books and records; and OWE never required EDJ to submit to drug testing. [App., p. 3, ¶¶ 11-14].

<u>ii.</u>    <u>EDJ Did Not Have Apparent Authority.</u>

37.    Any attempt to impute EDJ's or SunSci's contacts to OWE through an apparent authority theory also fails.  "An agent has apparent authority to bind a principal if a third party reasonably believes the agent has authority to act on behalf of the principal *and that belief is traceable to the principal's manifestations*."  *Callier*, 671 F.Supp.3d at 745 (emphasis added). "Apparent authority can exist where the principal *knowingly* permits the agent to exercise authority, or the principal holds the agent out as possessing authority."  *Heller*, 2023 WL 6702696, at *7 (emphasis added).  In circumstances similar to those present here, district courts in Texas have held that a plaintiff has failed to establish that apparent authority exists.

38.    For example, in *Callier*, the district court held that apparent authority did not exist where (i) the non-resident defendants never held the alleged agent "out as possessing authority to make calls on their behalf"; and (ii) when the at-issue contract prohibited the alleged agent from referring to itself as the non-resident's agent:

> Neither WMI, BCS, nor Kim [the non-resident defendants] held Synergy [the alleged agent] out as possessing authority to make calls on their behalf.  The contract between BCS and Synergy specifically states that "Synergy shall never represent nor avouch to any person(s) that he/she is an employee of BCS."  Synergy was limited solely to referring customers to BCS or WMI and, only BCS "shall have the absolute discretion to review merchant's application, approve and execute a Merchant Receivable Sale Agreement."  Therefore, apparent authority is not met.

*Callier*, 671 F.Supp.3d at 745-46; *see Heller*, 2023 WL 6702696, at *7; *see also  Hunsinger*, 2023 WL 2377481, at *5-*6.

39.    Similar to *Callier*, OWE has never held EDJ or SunSci out as "possessing authority to make calls on [OWE's] behalf."  *See id.*; [App., p. 2, ¶ 7, p. 3, ¶ 15].  Moreover, like the contract at-issue in *Callier*, the Independent Contractor Agreements expressly stated that EDJ and SunSci were not OWE's agents and that further prohibited them from referring to themselves as such. [*Id.*, p. 6, p. 70].    Instead, the Independent Contractor Agreements required EDJ and SunSci to

affirmatively disclose to any potential customers that they were independent contractors and *not*
OWE's agents or employees. [*See id.*; *see also id.*, pp. 43-44].

40.    These facts affirmatively establish that apparent authority does not exist. *See id.*;
*see also Heller*, 2023 WL 6702696, at *7. Thus, EDJ's and SunSci's alleged contacts with Texas
cannot be imputed to OWE under a theory of apparent authority. *See id.* Plaintiff's Complaint
should be dismissed for lack of personal jurisdiction for that reason too.

### iii.    OWE Did Not Ratify EDJ's or SunSci's Actions or Contacts.

41.    The last theory that courts consider to impose vicarious liability under the TCPA is
ratification. That, too, cannot serve as a basis for the Court to exercise personal jurisdiction in this
case.

42.    "Ratification is the affirmance of a prior act done by another, whereby the act is
given effect as if done by an agent acting with actual authority." *Callier*, 671 F.Supp.3d at 746.
An alleged principal can only be held liable under a ratification theory in two circumstances: (1)
when the principal is aware of the alleged agent's actions and does not object to it; or (2) when the
principal is aware of the complained-of actions and accepts the benefits of the agent's actions. *Id.*;
*see also Heller*, 2023 WL 6702696, at *7. Neither circumstance is present here.

43.    Conversely, the evidence establishes that OWE did not know that EDJ or SunSci
had placed any phone calls that violated the TCPA. [*Id.*, p. 2, ¶ 9, pp. 3-4, ¶ 17]. Indeed, OWE
did not have any knowledge that EDJ or SunSci had placed any phone calls that allegedly violated
the TCPA until Plaintiff filed this lawsuit. [*Id.*]. And why would it? The Independent Contractor
Agreements expressly prohibited EDJ and SunSci from placing phone calls to individuals that
were listed on the do-not-call registry. [*Id.*, p. 12, p. 76]. Moreover, OWE did not receive any
type of benefit in connection with the alleged phone calls. Any "leads" that EDJ and SunSci
generated did not result in a single sale of OWE's services. [*Id.*].

44.     To put the ratification theory completely to bed, since Plaintiff filed suit, OWE issued a cease-and-desist notice to EDJ whenever it learned about Plaintiff's allegations and terminated its relationship with SunSci.[5]  [App., p. 51].  This is just not a situation where OWE has taken any steps that demonstrate that it ratified EDJ's or SunSci's actions.  *See id.*[6]  Ratification is, thus, not applicable, and Plaintiff's Complaint should be dismissed.

**B.     Plaintiff Has Failed to State a Claim Upon Which Relief Can be Granted.**

45.     In the event that the Court determines that it can exercise personal jurisdiction over OWE (it should not), the Court should still dismiss Plaintiff's Complaint under Rule 12(b)(6) for failure to state a claim.  This is because Plaintiff's Complaint advances nothing other than generalized, conclusory allegations in support of her attempt to impose liability on OWE.

46.     In support of her claim, Plaintiff has alleged that she received six (6) phone calls that purportedly violated the TCPA.  However, Plaintiff's allegations do not establish that OWE owned or operated any of the phone numbers that were associated with the complained-of phone calls and do not otherwise establish that the calls were made by someone authorized to conduct business on OWE's behalf.:

- For Call No. 1, Plaintiff does not allege that OWE or its representatives placed the phone call to Plaintiff.  Instead, Plaintiff just alleges that an individual "with Our World Energy" was at Plaintiff's house for a solar consultation. [Doc. 16, ¶¶ 22-24]. As a result, Plaintiff mistakenly assumes that someone from OWE initiated the phone call.

---

[5] At this time, OWE does not know what led to Plaintiff receiving the complained-of phone calls. However, in another case that Plaintiff filed in this Court, the non-resident defendant adduced evidence which showed that *Plaintiff* had actually requested a quote for insurance services, which led to the call(s) that Plaintiff received. *See Bland v. Everdays, Inc.*, No. 4:24-cv-00946-P-BJ, Doc. 10, ¶ 9. It would be unfair to terminate the relationship with EDJ if Plaintiff had requested a solicitation like she apparently did in the *Everdays* case. *See id.*

[6] District courts in other jurisdictions have refused to exercise personal jurisdiction over non-resident defendants based upon a ratification theory. *Johansen v. HomeAdvisor, Inc.*, No. 2:16-cv-121, 218 F.Supp.3d 577, 586-88 (S.D. Ohio) ("Where, as here, a seller has no information of telephone calls being placed by a purported agent, the seller could not have ratified those calls."); *Naimman v. TranzVia, LLC*, No. 17-cv-4813-PJH, 2017 WL 5992123, at *13 (N.D. Cal. 2016) (holding no personal jurisdiction where plaintiff failed to demonstrate that defendant ratified agent's actions).

- Plaintiff alleges that she received Call No. 2 from an individual named John Whitmore. While Plaintiff attempts to allege that Mr. Whitmore stated that he was calling "from" Our World Energy, Plaintiff later acknowledges that Mr. Whitmore is affiliated with SunSci (and also attempts to hold OWE vicariously liable for SunSci's calls). [*Id.*, ¶¶ 27-31]. To be certain, Mr. Whitmore is not an OWE employee and was not authorized to conduct business on OWE's behalf. [App., p. 3, ¶¶ 16]. Mr. Whitmore's entity, SunSci, was an independent contractor that OWE used. [*See id.*, pp. 69-99].

- Plaintiff alleges that Call No. 3 came from a fictitiously-named "Common Green Solar." [Doc. 16, ¶ 33]. Without any allegation to substantiate her belief, Plaintiff assumes that "Common Green Solar" and EDJ are the same entity and that OWE can be vicariously liable for this call. [*See id.*, ¶ 34]. Plaintiff, however, does not make a single allegation that substantiates or supports her naked assumption.[7] [*See id.*].

- Plaintiff alleges that she received Call No. 4 from Eric DeJohn, who was supposedly "from" Our World Energy. [*Id.*, ¶ 36]. Mr. DeJohn is merely one of OWE's independent contractors. [*See* App., pp. 5-50 (EDJ Agreement)]. Although Plaintiff alleges that she received an email from Mr. DeJohn's company e-mail,[8] she does not specify whether it was an OWE e-mail address. [*Id.*, ¶ 39]. To be clear, Mr. DeJohn is not an OWE employee, has not been provided an OWE e-mail address, and was not authorized to conduct business on OWE's behalf. [App., p. 2, ¶ 8]. Mr. DeJohn's entity, EDJ Enterprises, was an independent contractor that OWE used. [*Id.*, pp. 5-50].

- Call No. 5 was also allegedly from Mr. DeJohn. [Doc. 16, ¶ 40].

- Plaintiff alleges that Call No. 6 also came from "Common Green Solar." However, Plaintiff (again) offers no explanation of how "Common Green Solar" is tied to OWE, other than by alleging that she believes it is a fictitious name that EDJ uses. [*Id.*, ¶ 44].

47.    None of these alleged calls establish that OWE or its authorized representatives placed the phone calls that are the subject of this lawsuit. Critically, these allegations do not tie any of the phone numbers from which the calls originated to OWE or to individuals authorized to conduct business on OWE's behalf. Nor does Plaintiff make a single allegation that ties Mr.

---

[7] The unsubstantiated nature of Plaintiff's allegations is exemplified by her allegations that concern "Common Green Solar.". In her Original Complaint, Plaintiff alleged that Common Green Solar was a fictitious name for SunSci.". [Doc. 1, ¶ 32]. Now that SunSci has been dismissed [Doc. 14], Plaintiff has alleged that Common Green Solar must be a fictitious name that *EDJ* uses. [Doc. 16, ¶ 33]. It is clear that Plaintiff does not know the entity behind the calls from Common Green Solar.

[8] While Plaintiff alleges that she received the e-mail from a "company email," the screenshot that Plaintiff includes in the Complaint clearly shows that the e-mail was sent from a "Gmail" account. [Doc. 16, ¶ 39].

Whitmore or Mr. DeJohn to OWE or otherwise allege that Mr. Whitmore or Mr. DeJohn were authorized to conduct business on OWE's behalf. [*See generally* Doc. 16].

48.     Courts analyzing similar allegations while performing a Rule 12(b)(6) analysis have held that a plaintiff has failed to state a claim under the TCPA.[9] For example, in *Hunsinger v. Dynata, LLC*, a TCPA-plaintiff alleged that the defendant (Dynata) owned the phone numbers that were used to place the complained-of phone call. 2023 WL 2377481, at \*1. The district court ultimately held that the plaintiff's allegations were conclusory and dismissed the lawsuit under Rule 12(b)(6):

> The amended complaint also states--again without any elaboration or specific factual support--that Dynata owns the phone number used to call him on September 21. It further states that the September 21 caller told Hunsinger "to go to Dynata.com" and that the link Hunsinger received in the June 3, 2022 text message sent him to a Dynata-affiliated website. But these alleged facts are still not sufficient to permit the Court to infer the call or the text was initiated by an entity acting with any authority--actual or apparent--from Dynata.

*Id.* at \*6.

49.     Similarly, in *Katz v. Caliber Home Loans, Inc.*, the plaintiff alleged that the defendant (Caliber) had violated the TCPA. No. 3:23-CV-0145-S, 2023 WL 5311488, at \*3 (N.D. Tex. 2023). In support of its claim, the plaintiff alleged that it received a call which "offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team." *Id.* This Court (Dallas Division) ultimately held that this allegation was not sufficient to state a claim under the TCPA:

> The only fact Plaintiff alleges in support of his conclusion that Defendant initiated the challenged phone calls is that at some point during the July 5, 2022, phone call, the unidentified caller "offered the Defendant's services from the Caliber Home

---

[9] Courts in other jurisdictions have granted dismissed cases under Rule 12(b)(6) when considering similar (conclusory) allegations. *Naiman v. Freedom Forever, LLC*, No. 19-cv-00256-JSC, 2019 WL 1790471, at \*4 (N.D. Cal. 2019) (dismissing TCPA claims under Rule 12(b)(6) when complaint's agency-related allegations were "wholly conclusory"); *Freidman v. Massage Envy Franchising, LLC*, No. 3:12-cv-02962-L-RBB, 2013 WL 3026641, at \*3-\*4 (S.D. Cal. 2013) (dismissal warranted under Rule 12(b)(6) when plaintiff's allegations were speculative).

Loan Mortgage Refinance Team." Plaintiff does not allege any fact regarding, for example, the identity of the call or the nature of the phone number connected to the phone calls (such as whether it belonged to Defendant or was a fictitious phone number), and the facts Plaintiff does provide about the content of the phone call are vague. Without more, Plaintiff's solitary allegation is insufficient to plausibly allege that Defendant took the steps necessary to physically place the phone call.

*Id.*

50.    Here, like the *Hunsinger* and *Katz* plaintiffs, Plaintiff has offered nothing more than conclusory allegations in support of her TCPA claim against OWE. *See id.*; *see also Hunsinger*, 2023 WL 2377481, at *6. Thus, for the same reasons set forth in those cases, Plaintiff respectfully requests that the Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim. *See id.*

51.    Plaintiff has also failed to state a claim for vicarious liability under the TCPA. Like its allegations concerning direct liability, Plaintiff's allegations of vicarious liability are completely conclusory. There are no allegations (let alone, detailed ones) that explain how OWE controlled EDJ's work or how the relationship supposedly rose to the level of a principal-agent relationship. [*See generally* Doc. 16 (conclusory allegations regarding vicarious liability)]. In fact, contrary to Plaintiff's allegations, the EDJ Agreement does not even require EDJ to generate sales leads by engaging in telemarketing efforts. [*See* App., p. 12 ("*To the extent that* Vendor engages in any activity involving telephone or text messaging communication with a customer, . . .")]. Plaintiff has tried to solve her problem by identifying certain contractual provisions which purportedly evidence a principal-agent relationship. [*See* Doc. 16, ¶¶ 52-61]. But as shown *supra*, none of those provisions elevate OWE's relationship with EDJ to a principal-agent one.

52.    Without any well-pleaded allegations that establish that OWE had the right to control the manner and means of the alleged telemarketing campaign, Plaintiff has failed to state a claim for vicarious liability under the TCPA. Plaintiff's Complaint should be dismissed.

53.    *Hunsinger* is instructive to this case.  In *Hunsinger*, this Court determined that a plaintiff failed to state a claim for vicarious liability under the TCPA in similar circumstances. *Id.* Specifically, this Court held that the plaintiff's "general[]" allegations "that the September 21, 2021 caller is an agent for Dynata, that Dynata has an agreement with the caller, and that Dynata compensates the caller for their time" were wholly conclusory and failed to state a claim. This Court has reached the same conclusion in other cases too.  *Horton Nat'l Republican Senatorial Committee*, No. 3:22-CV-1000-G-BK, 2023 WL 372066, at *4-*5 (N.D. Tex. 2023) (dismissing TCPA case under Rule 12(b)(6) when the plaintiff "failed to plead more than conclusions and formulaic recitations of vicarious liability"); *Cunningham v. TechStorm, LLC*, 2017 WL 721079, at *2 (N.D. Tex. 2017) (dismissing TCPA case under Rule 12(b)(6)).

54.    Like the *Hunsinger* plaintiff, the allegations that Plaintiff has advanced in this case are conclusory and are not sufficient to plausibly state a claim under a vicarious liability theory. *See id.* The reason that the substance of Plaintiff's vicarious liability allegations are so thin is because they are not true. Contrary to Plaintiff's allegations, EDJ is *not* OWE's agent. [App., p. 2, ¶¶ 7-8]. Neither is EDJ Enterprises. [*Id.*, p. 3, ¶¶ 11-12]. The Independent Contractor Agreements confirm as much.[10] [*Id.*, p. 6, p. 37 (same)]. At bottom, EDJ and SunSci are independent contractors, not agents or employees. *See id.*

55.    Plaintiff has also failed to plausibly allege apparent authority as a basis to impose vicarious liability. Critically, Plaintiff has not alleged that OWE "knowingly" permitted EDJ (or

---

[10] Although courts do not typically examine evidence extrinsic to the pleadings in a Rule 12(b)(6) analysis, the Fifth Circuit has recognized an exception to this rule when (1) the documentary evidence is attached to the defendant's motion to dismiss; (2) the documents are referred to in the plaintiff's complaint; and (3) the documents are central to the plaintiff's claim(s). *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Each element is satisfied here. The only element potentially in dispute is whether the EDJ Agreement is central to Plaintiff's claims. It is.  Specifically, Plaintiff relies on the EDJ Agreement in her attempt to establish vicarious liability.  [Doc. 16, ¶¶ 52-61 As a result, OWE maintains that the Court can consider the EDJ Agreement in its Rule 12(b)(6) analysis.

any other contractor) to exercise authority on OWE's behalf or that OWE otherwise held EDJ out as possessing authority to conduct OWE's business. *See Hunsinger*, 2023 WL 2377481, at *6; *see also Heller*, 2023 WL 6702696, at *7. While Plaintiff alleges steps that OWE supposedly should have taken to ensure its contractors did not call individuals on the do-not-call registry, Plaintiff does not allege (and cannot credibly do so) that OWE *knew* that contractors were calling individuals on the do-not-call registry and did nothing to stop the contractors from placing the calls.[11] [*See generally* Doc. 1]. There is, thus, no basis to determine that EDJ had apparent authority or that OWE could be vicariously liable under an apparent authority theory of liability. *See id.*

56.    Plaintiff's allegations in support of its ratification theory of liability are also conclusory and fail to state a claim for vicarious liability under the TCPA. Specifically, none of Plaintiff's allegations demonstrate that OWE knew that EDJ was placing phone calls that violated the TCPA and did not object to it.[12] [*See id.*, ¶¶ 61-66]. Nor do they establish that OWE accepted any benefit as a result of the allegedly violative phone calls.[13] [*See id.*]. Without such allegations, Plaintiff has failed to state a claim under the TCPA. *See Hunsinger*, 2023 WL 2377481, at *5.

57.    In sum, Plaintiff has failed to state a claim under the TCPA because she has not plausibly alleged that (i) OWE initiated the phone calls that Plaintiff has identified in her Complaint; and (ii) OWE can be vicariously liable through any actual authority, apparent authority,

---

[11] Again, there would be no reason for OWE to know its contractors would call individuals on the do-not-call registry. The Independent Contractor Agreements required strict compliance with do-not-call laws. [App., p. 12, p. 76].

[12] In fact, the evidence establishes the contrary. [App., pp. 2-3, ¶ 10 (sending cease-and-desist letter to EDJ), ¶ 18 (terminating relationship with SunSci)]. Moreover, OWE can only control its own actions. To the extent that Plaintiff received additional solicitations after she indicated that she did not want to be contacted, that is something out of OWE's control. The allegation that Plaintiff received an additional call(s), in and of itself, does not demonstrate that OWE had any involvement with the call.

[13] The only "benefit" that OWE alleges that OWE received was to have its services marketed to Plaintiff a second time. [Doc. 16, ¶ 82]. It is not clear how it is a "benefit" to market to Plaintiff a second time whenever she had already expressed that she was not interested in purchasing a solar paneling system. [*See* Doc. 16, ¶¶ 32, 40].

or ratification theory of liability. For those reasons, OWE respectfully requests that the Court grant this Motion and dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6).

**V.**
**CONCLUSION & PRAYER FOR RELIEF.**

For the above-stated reasons, OWE respectfully requests that the Court dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, OWE requests that the Court dismiss Plaintiff's Complaint against OWE for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). OWE lastly requests all other and further relief, whether at law or in equity, to which it may be justly entitled.

Respectfully submitted,

*/s/Caleb B. Bulls*
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Caleb B. Bulls
State Bar No. 24082749
caleb.bulls@kellyhart.com
**KELLY HART & HALLMAN, LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Facsimile: (817) 878-9280

***Attorneys for OWE***

## CERTIFICATE OF SERVICE

On February 11, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served the following counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Andrew Roman Perrong, Esq.
**PERRONG LAW, PLLC**
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038

Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043

*/s/Caleb B. Bulls*
Caleb B. Bulls