## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| KELLY BLAND, individually and on behalf of all others similarly situated,<br><br><br>                    Plaintiff,<br>      v.<br><br>OUR WORLD ENERGY LLC<br>AND<br>EDJ ENTERPRISES INC.<br><br><br>                    Defendants. | Case No. 4:24-cv-00994-P<br><br><br>**JURY TRIAL DEMANDED** |

## <u>RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

**Contents**

INTRODUCTION ..................................................................................................- 5 -

LEGAL STANDARD...........................................................................................- 5 -

ARGUMENT ........................................................................................................- 6 -

    A.   The Plaintiff has unquestionably pled sufficient facts to justify the exercise of specific personal jurisdiction against Our World in Texas based on calls she received from Texas area codes to her phone number in Texas.....................................................................- 6 -

    B.   The Plaintiff has adequately alleged a claim for vicarious liability, if not direct liability, for the conduct at issue. .........................................................................- 15 -

    C.   The Defendant's 12(b)(6) motion, which is couched in its denial of vicarious liability, fares no better.......................................................................................- 28 -

CONCLUSION....................................................................................................- 29 -

**Cases**

*Abramson v. Agentra, LLC*, No. CV 18-615, 2018 WL 6617819 (W.D. Pa. Dec. 18, 2018) ...- 12 -

*Ackerman v. Fuego Leads, LLC*, No. 4:23-CV-61, 2024 WL 2136281 (E.D. Va. May 13, 2024) .- 13 -

*Am. Home Mortg. Corp. v. First Am. Title Ins. Co.*, No. CIV.A.07-01257(JLL), 2007 WL 3349320 (D.N.J. Nov. 9, 2007)............................................................................- 16 -

*Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817 (N.D. Ill. 2016) ............- 26 -, - 27 -

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)..............................................- 14 -

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ......................................................................- 6 -

*Baker v. Caribbean Cruise Line, Inc.*, No. CV 13-8246-PCT-PGR, 2014 WL 880634 (D. Ariz. Mar. 6, 2014)...................................................................................................- 12 -

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................- 6 -

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021).........................................- 13 -, - 15 -

*Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857 (N.D. Ill. 2020) ..............................- 14 -

*Bradley v. DentalPlans.com.*, 617 F. Supp. 3d 326 (D. Md. 2022) ..............................- 13 -, - 15 -

*Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Cal.*, 1 F.4th 346 (5th Cir. 2021) ..........................................................................- 7 -

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)..................................................- 7 -, - 12 -

*Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659 (W.D. Tex. Aug. 10, 2020) ........................................................................................................- 22 -

*Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736 (W.D. Tex. 2023)...............................- 22 -

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) ..........................................................- 18 -

*Castle Cheese, Inc. v. MS Produce, Inc.*, No. CIV.A 04-878, 2008 WL 4372856 (W.D. Pa. Sept. 19, 2008) .......................................................................................................- 24 -

*Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590 (D.N.J. Nov. 20, 2018)...................................................................................- 19 -

*Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017) ...............................................................................................- 17 -, - 20 -

*Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363-OLG (HJB), 2024 WL 3100773 (W.D. Tex. May 23, 2024), *report and recommendation adopted*, No. SA-22-CV-00363-OLG, 2024 WL 3100279 (W.D. Tex. June 18, 2024) ................................................- 8 -, - 9 -, - 10 -, - 17 -

*Dobkin v. Enter. Fin. Grp., Inc.*, No. 2:14-CV-01989 WHW, 2014 WL 4354070 (D.N.J. Sept. 3, 2014) ......................................................................................................................- 25 -

*Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988 (N.D. Ill. 2016).....................- 19 -, - 21 -

*Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811 (S.D. Tex. 2008)...........................- 23 -, - 24 -

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.* 141 S. Ct. 1017 (2021) .................- 10 -, - 11 -

*Frey v. Frontier Utilities Ne. LLC*, No. CV 19-2372-KSM, 2020 WL 12697468 (E.D. Pa. Apr. 13, 2020) .................................................................................................................- 16 -

*Garcia-Celestino v. Ruiz Harvesting, Inc.*, 898 F.3d 1110, 1122 (11th Cir. 2018).................- 25 -

*Hanson v. Denckla*, 357 U.S. 235 (1958) ..................................................................- 8 -

*Havassy v. Keller Williams Realty, Inc.*, No. CV 21-4608, 2024 WL 1640984 (E.D. Pa. Apr. 16, 2024) ..................................................................................................................- 12 -

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984)..............................- 7 -

*Heller v. Marriott Vacations Worldwide Corp.*, No. EP22CV00398FMMAT, 2023 WL 6702696, at *5 (W.D. Tex. Oct. 11, 2023) .........................................................- 23 -

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019).............- 26 -, - 27 -

*Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083 (N.D. Cal. 2014).........................- 24 -

*Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852 (N.D. Ill. 2024)...........................- 16 -

*Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481 (N.D. Tex. Feb. 7, 2023) ..................................................................................................................- 28 -

*In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d 576 (5th Cir. 2014) - 10 -

*In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141 (D. Idaho 2011) ........- 26 -

*In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, No. 1:13-MD-2493, 2019 WL 7835630 (N.D.W. Va. Apr. 3, 2019) .........................................................................- 25 -

*Jackson v. Northstar Mortg., Inc.*, 645 F. Supp. 2d 636 (W.D. Tenn. 2007) .........................- 16 -

*John v. Keller Williams Realty, Inc.*, No. 619CV1347ORL40DCI, 2020 WL 10502631 (M.D. Fla. Feb. 4, 2020) .........................................................................................................- 20 -

*Jones v. Mutal of Omaha Ins. Co.*, 639 F. Supp. 3d 537 (D. Md. 2022) ...............................- 18 -

*Katz v. Caliber Home Loans, Inc.*, No. 3:23-CV-0145-S, 2023 WL 5311488 (N.D. Tex. Aug. 17, 2023) ..................................................................................................................- 28 -

*Keim v. ADF Midatlantic, LLC*, 2015 WL 11713593 (S.D. Fl. 2015) ....................................- 27 -

*Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052 (D. Colo. 2023) ......................................- 19 -

*Klein v. Com. Energy, Inc.*, 256 F.Supp.3d 563 (W.D. Pa. 2017) .................................- 16 -, - 28 -

*Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137 (W.D. Pa. June 29, 2016)..- 18 -

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ................................- 18 -, - 19 -

*Meyer v. Holley*, 537 U.S. 280 (2003) ......................................................................- 19 -

*Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823 (N.D. Ill. Dec. 7, 2022)...- 29 -

*Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369 (5th Cir. 2019) .........................- 25 -

*Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308 (D. Mass. 2020) ............................- 13 -

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006)......................................- 7 -

*Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378 (E.D. Pa. Apr. 5, 2019) - 14 -

*Showers v. Pelican Inv. Holdings Grp., LLC*, No. 3:23-CV-2864-NJR, 2024 WL 4350309 (S.D. Ill. Sept. 30, 2024) ................................................................................................. - 13 -

*Smith v. Vision Solar LLC*, No. CV 20-2185, 2022 WL 1172985 (E.D. Pa. Apr. 20, 2022) ... - 16 -

*Stemke v. Marc Jones Constr., LLC*, No. 5:21-CV-274-30PRL, 2021 WL 4340424 (M.D. Fla. Sept. 23, 2021) ................................................................................................. - 28 -

*Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554 (S.D. Tex. 2021) ......................... - 10 -

*Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485 (5th Cir. 2018) ........................... - 10 -

*United States v. Dish Network LLC*, 256 F. Supp. 3d 810 (C.D. Ill. 2017) ............ - 16 -, - 21 -

*Van Rooyen v. Greystone Home Builders, LLC*, 295 F. Supp. 3d 735 (N.D. Tex. 2018) .......... - 9 -

*Walden v. Fiore*, 571 U.S. 277 (2014) ............................................................................... - 8 -

*Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741 (5th Cir. 2010) .............................................. - 6 -

*Winters v. Grand Caribbean Cruises Inc.*, 2021 WL 511217, at *5-*6 (D. Ariz. Feb. 11, 2021). - 22 -

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ................................... - 14 -

*Worsham v. Direct Energy Servs., LLC*, No. CV SAG-20-00193, 2021 WL 948819 (D. Md. Mar. 12, 2021) ................................................................................................. - 21 -

## Statutes

Fᴇᴅ. R. Cɪᴠ. P. 8 ................................................................................................................. - 6 -

## Other Authorities

Plaintiff's Amended Complaint (Am. Compl.) ............................................................. passim

Rᴇꜱᴛᴀᴛᴇᴍᴇɴᴛ (Tʜɪʀᴅ) ᴏꜰ Aɢᴇɴᴄʏ ................................................................................ passim

## INTRODUCTION

Defendant Our World Energy LLC's (Our World or Defendant)'s motion to dismiss must be denied because the Plaintiff has pled sufficient facts to demonstrate the exercise of personal jurisdiction in Texas against Our World, on account that it, by admission, does business in Texas for the sale of solar panels through purportedly "independent" sales vendors, like co-Defendant EDJ Enterprises Inc. The claims at issue in this litigation arise out of conduct jointly committed by Our World and EDJ as part of a well-pled agency relationship for the sale of exclusive leads for customers interested in solar energy to buy Our World's products and services.

And looking beyond this fact, Our World performs its core business, that of selling solar panels, to individuals across the sunbelt states, including Texas. It holds Texas contractor licenses, which it permitted its agents to use. It brokers and sells solar panels to Texas residents. And the conduct alleged here–marketing for its solar panels–indisputably was aimed at Texas. Courts across the country have held sufficient such allegations, including as part of an agency relationship. This Court must reject Defendant's general denial of liability and agency couched as an attack on personal jurisdiction, or its alternative attempts to plead that the Plaintiff has failed to state a claim. Defendant's motion must be unquestionably denied.

## LEGAL STANDARD

"The plaintiff has the burden of establishing that the court has personal jurisdiction." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 211 (5th Cir. 2016) (cleaned up). To carry that burden, a plaintiff need only "make a prima facie showing." *Id.* (cleaned up). This is a "liberal standard." *Van Rooyen v. Greystone Home Builders, LLC*, 295 F. Supp. 3d 735, 742 (N.D. Tex. 2018). In demonstrating the presence of personal jurisdiction, the Plaintiff is not confined to the allegations in the Complaint, but may supplement those by

affidavits, depositions, exhibits, or other combinations thereof. *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992). The Court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Id.*

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

## ARGUMENT

A. <u>The Plaintiff has unquestionably pled sufficient facts to justify the exercise of specific personal jurisdiction against Our World in Texas based on calls she received from Texas area codes to her phone number in Texas.</u>

Defendant, in essence, adopts in its motion an "I didn't do it" defense, but styles it instead as an attack on this Court's exercise of personal jurisdiction over the Defendant because the Defendant (allegedly) did not call Plaintiff. But such doubt as to liability is more properly the subject of a jury trial or at the very least a motion for summary judgment. Notwithstanding the

fact that the calls Defendant, or its agents, as it is unclear at this point which calls were placed by which parties, is alleged to have placed (1) for the most part originated from an Texas area code, (2) were sent to an Texas resident, (3) with an Texas area code, (4) who came to the Plaintiff's address, (5) to a company holding licenses for the services sought to be sold in Texas to do the same business as on the calls, the Defendant incredulously claims that it is not subject to specific personal jurisdiction in Texas. This argument lacks any merit and must be denied.

There exist two types of personal jurisdiction: general and specific. Specific personal jurisdiction exists when the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). General personal jurisdiction exists when the defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984). As a preliminary matter, the Plaintiff does not contest that this court lacks *general* jurisdiction over Defendant. But the Defendant is unquestionably subject to *specific* personal jurisdiction here, as bolstered by the Plaintiff's affidavit in support of jurisdiction.

The plaintiff must establish two things to establish *specific* jurisdiction over an out-of-state defendant. *First*, the Plaintiff must demonstrate that minimum contacts exist between the defendant and the state; *second*, the Plaintiff must demonstrate that the harm alleged arises out of or relates to the defendant's forum-related contacts. *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Cal.*, 1 F.4th 346, 351 (5th Cir. 2021). If a plaintiff carries its burden as to these first two prongs of specific jusridiction, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

The first prong, minimum contacts, is unquestionably met here. To satisfy this burden, a plaintiff must make a *prima facie* showing that the defendant has taken "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Those contacts must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploit[ing] a market" in the forum State or entering into relationships centered there. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Plaintiff alleges that the Defendant is subject to specific personal jurisdiction in Texas because it placed calls, either directly or through a vendor like EDJ, to Texas telephone numbers like the Plaintiff's, in some instances using Texas phone numbers, and sending representatives to the Plaintiff's home in Texas to attempt to sell Our World's solar panels that would be installed at the Plaintiff's home there. (Am. Compl. ¶ 17, 22, 23, 24, 25, 31, 37, 39, 44.)

These allegations go beyond those the Western District of Texas already held were sufficient in *Cunningham v. Watts Guerra, LLP*, where the Court held sufficient the plaintiff's allegations that the defendants "place[d], or cause[d] another to place, telemarketing calls to consumers in Texas, for the purposes of retaining those Texas consumers for legal representation by Texas attorneys" and that the defendants "served a retainer agreement to him for the purpose of providing legal representation in Texas, and repeatedly directed follow-up communications to him while knowing he was a resident of Texas." *Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363-OLG (HJB), 2024 WL 3100773, at *8 (W.D. Tex. May 23, 2024), *report and recommendation adopted*, No. SA-22-CV-00363-OLG, 2024 WL 3100279 (W.D. Tex. June 18, 2024). Here, the Plaintiff has alleged, and supported, her allegations that Defendant attempted to sell solar panels for her home in Texas, including, as in *Cunningham*, directing follow-up

- 8 -

communications to the Plaintiff knowing that the Plaintiff was located in Texas, and going so far as to provide a link to the Defendant's branch office in Grand Prairie, Texas. (Am. Compl. ¶ 39.)

Defendant takes issue with the second prong of the jurisdictional analysis, not the first. Defendant does not dispute that minimum contacts between Defendant and Texas exist, nor can it; Defendant does business in Texas related to the installation and sale of solar panels and can justly be hauled into Court in Texas as a result of *that* conduct. However, Defendant argues that the *specific harm* here, the *illegal marketing*, does not *relate* to the defendant's forum-related contacts. That's a distinction without a difference. As will be explained below, a Defendant who knowingly sells its goods and services in a particular jurisdiction is liable for any marketing conduct made to induce the purchase of goods and services in that jurisdiction.

The Defendant's argument also happens to be one that the Western District of Texas flatly rejected in *Cunningham*, nothing the "liberal standard" applicable to such motions when, as here, there is, at best, conflicting evidence as to the propriety of personal jurisdiction. *Cunningam*, 2024 WL 3100773, at *9 (citing *Van Rooyen v. Greystone Home Builders, LLC*, 295 F. Supp. 3d 735, 742 (N.D. Tex. 2018)). The *Cunningham* court went on to explain why the distinction between the services sought to be rendered and the marketing for those services made little sense in the context of a jurisdictional motion:

> Plaintiff also has sufficiently alleged injuries related to WG LLC's Texas contacts. He alleges that he was repeatedly solicited by telephone to file a claim in the Camp Lejeune litigation—*i.e.*, litigation handled by WG LLC, with administrative support from WG LLP. Plaintiff alleges that, when he asked the callers *who* was soliciting his business, they were evasive, refusing to answer unless Plaintiff filed a claim in the Camp Lejeune litigation. Plaintiff alleges he played along, providing an alias to uncover the identities of the callers. From then on, Plaintiff alleges he received several documents which, if signed, purported to hire WG LLC to prosecute his Camp Lejeune claims on a contingency-fee basis and authorize the disclosure of Plaintiff's private health information to WG LLC. Plaintiff further alleges that he "received at least 22 follow-up calls from Watts Guerra" to sign those documents. . . . Although WG LLC denies these

- 9 -

allegations and provides contradicting declaratory evidence, at this stage the Court must resolve the conflicts in Plaintiff's favor. Applying that rule, Plaintiff's allegations are sufficient to meet his prim facie burden.

*Id.* at *9 (cleaned up). As the Southern District of Texas observed, quoted in *Cunningham*:

> The Fifth Circuit notably holds that a defendant that initiates a telephone call and allegedly commits an intentional tort purposefully avails itself of the state where the effect of the tort fell and can therefore be subject to personal jurisdiction there. It thus doesn't matter whether Life Protect knew in advance that Thomas resided in Texas because certain types of intentional conduct must, by their very nature, manifest their effects beyond the borders of the state in which the defendant acts. . . . In this instance, *wherever* it reaches a consumer with a robocall, Life Protect has purposefully availed itself of that state's laws. . . . Where a business is alleged to engage in intentional practices assuredly designed to manifest results across the country in contravention of a federal statute, the act of reaching out in that prohibited manner is purposeful availment of "the privilege of causing a consequence" in whatever state that call reaches.

*Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 567–68 (S.D. Tex. 2021) (cleaned up)

(quoting and collecting cases from *Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490–

91 (5th Cir. 2018)). The Court explained why the Defendant's argument here that its marketing

activities should be treated as jurisdictionally separate from its other activities was unavailing:

> The Fifth Circuit [also] recognizes that mailing a product to a resident of the forum may on its own constitute "a significant contact with the forum." And Life Protect's knowledge of Thomas's location prior to selling and mailing her the product indicates that it took "purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state."

*Id.* at 568 (citing *In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d

576, 588 (5th Cir. 2014)). To allow Defendant to escape liability at the pleadings stage on

jurisdictional grounds for actions it allegedly did not commit would likewise take a hatchet the

TCPA and the Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct*.

141 S. Ct. 1017 (2021). In *Ford*, a Montana resident passed away as a result of an accident the

plaintiff claimed to be a result of Ford's negligence. *Id. at 1023*. Ford moved to dismiss based on

a lack of personal jurisdiction. *Id.* Although it correctly denied general jurisdiction because it

was headquartered in Michigan and was incorporated in Delaware, it also denied specific jurisdiction because the car was assembled in Kentucky, sold by a Ford dealer in Washington, then sold by third parties, not Ford, in Oregon, and then to the Montana resident. *Id.* Ford argued, as Defendant does here, that a break in the *causational* chain, such as allegedly not having placed the call or sold the car to the injured party, also broke the *jurisdictional* chain. *Id.* at 1024.

Not so. The Supreme Court rejected the same causation-only approach proffered by both Ford and Defendant. In so doing, it clarified that an alleged break in the chain of *causation*, such as (allegedly) not having placed the calls at issue here, akin to not having sold the car at issue into Montana, does *not* break the chain of *jurisdiction*, which is subject to its own analysis, *irrespective* of the causational elements of the case. Defendant, like Ford, cannot deny that it stood ready to provide its services to Texas residents and to benefit their own business. *Cf. id.* at 1029. Nor can the Defendant deny that it did not know that it was dealing with a Texas resident and that it would be subject to suit here if, for example, the Plaintiff actually purchased solar panels from the Defendant and then sued for breach of contract. Because the Defendant is unquestionably subject to specific personal jurisdiction here for selling such products, the Defendant is also subject to specific personal jurisdiction because of related marketing conduct.

Plaintiff has alleged facts, and sworn to them in an affidavit, which, if true, unquestionably give rise to the exercise of specific personal jurisdiction in Texas with respect to the illegal calls complained of. Not only has Plaintiff alleged that she received a call to her Texas number, registered in Texas, while she was in Texas, but also that the majority of the telemarketing calls to her *bore a Texas area code*. Not only that, an agent of the Defendant apparently had no qualms about showing up to the Plaintiff's house in Texas uninvited in an effort to sell the Defendant's solar panels. A defendant that has accepted the privileges of

directing business at the forum state has also accepted the burden of appearing before its courts, even if they have never physically entered the forum state. *Burger King*, 471 U.S. at 476. Here, the plaintiff need only make out a *prima facie* case of personal jurisdiction and she has unquestionably done so under the wealth of TCPA-specific case law holding the same.

Moreover, in TCPA cases, courts find that specific personal jurisdiction exists when a defendant, or their agent, sends a message into the forum state by targeting a phone number with an area code that is associated with that forum. *See, e.g.*, *Havassy v. Keller Williams Realty, Inc.*, No. CV 21-4608, 2024 WL 1640984, at *6–7 (E.D. Pa. Apr. 16, 2024); *Abramson v. Agentra, LLC*, No. CV 18-615, 2018 WL 6617819, at *4 (W.D. Pa. Dec. 18, 2018) ("Agentra purposefully aimed its conduct at Pennsylvania by contacting directly Abramson's Pennsylvania mobile and residential telephone numbers."); *Baker v. Caribbean Cruise Line, Inc.*, No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) (holding sufficient allegations "Defendant made calls to Plaintiff's Arizona [cell phone] number" and that "those calls are the basis for Plaintiff's claims."). Defendant's argument that its marketing conduct and the injury stemming therefrom is insufficient to give rise to the exercise of personal jurisdiction ought to be rejected.

Defendant alternatively couches its jurisdictional challenge as to the second prong, the relationship between the harm and the forum-related contact, in an agency analysis, which fares no better. As will be explored *infra*, the Defendant engaged SunSCI and EDJ to provide it marketing services for its solar products. (Am. Compl. ¶ 47.) Our World also did so while granting SunSCI and EDJ a territory which included Texas, made use of the Defendant's Texas licenses, and insisted that it would be the first recipient of the leads and marketing conduct conducted by SunSCI and EDJ. (Am. Compl. ¶ 53, 54, 57.) Although the exact argument proffered by the Defendant here appears to be one of first impression in the Fifth Circuit, other

federal courts in the TCPA context have rejected the notion that a seller is not subject to specific personal jurisdiction arising from the conduct of the marketing vendors it hires, particularly, as here, where the seller granted territory. As one court aptly observed in a similar case:

> Cigna's vicarious liability for the calls to Bradley—a Maryland resident who received the impermissible calls while in Maryland—easily satisfies the "relatedness" test. A corporation like Cigna "can purposefully avail itself of a forum by directing its agents or distributors to take action there." If an agency relationship exists, then DentalPlans' contacts with Maryland—including the robocalls at issue—may be attributable to Cigna. . . . At this stage, Bradley has made a *prima facie* showing that an agency relationship exists between Cigna and DentalPlans. Vicarious liability plays an essential role in enforcing the TCPA and exercising jurisdiction over sellers aligns with the regulatory mission of the statute. Sellers are "in the best position to monitor and police TCPA compliance by third-party telemarketers," and vicarious liability incentivizes companies to keep their telemarketers in compliance with the law.

*Bradley v. DentalPlans.com.*, 617 F. Supp. 3d 326, 337 (D. Md. 2022) (cleaned up). Defendant's argument for why there exists no specific personal jurisdiction rests entirely on the faulty premise that the Defendant claims it hired other companies to do its dirty work and therefore did not direct its conduct into Texas. A nearly identical argument to this one was summarily rejected in *Ackerman v. Fuego Leads, LLC*, No. 4:23-CV-61, 2024 WL 2136281, at *2 (E.D. Va. May 13, 2024) (holding defendant was subject to specific personal jurisdiction in Virginia when it authorized *a third party* to send calls into Virgina).

The Seventh Circuit confirmed this proposition in *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021), where it concluded that the actions of telemarketing agent could be attributed to principal for the purposes of establishing specific personal jurisdiction and satisfied federal due process requirements. *Accord Showers v. Pelican Inv. Holdings Grp., LLC*, No. 3:23-CV-2864-NJR, 2024 WL 4350309, at *4 (S.D. Ill. Sept. 30, 2024) (citing *Bilek* and rejecting similar argument on less developed pled facts than in that case); *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020) ("Rosenberg alleges that Loan Depot hired Ascendant to

- 13 -

conduct telemarketing. . . . Taken together, Rosenberg alleges that Ascendant called him as Loan Depot's agent and Loan Depot knew of and therefore ratified Ascendant's unauthorized conduct."); *accord Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 862 (N.D. Ill. 2020) (rejecting similar vicarious liability arguments couched as jurisdictional challenge).

And nothing about the exercise of jurisdiction against the Defendant here would offend traditional notions of fair play and substantial justice or at all be inconsistent with constitutional due process. The crux of the constitutional "due process analysis" is "foreseeability," "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *Id.* "When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there." *Id.* (cleaned up). There can be no doubt that Defendant stood ready to serve a market for solar panels to Texas residents. And the Plaintiff's case arises out of that very same business of soliciting solar panels. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987). Plaintiff clearly has an interest in obtaining relief under the TCPA, and Texas has an interest in protecting its residents. *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019) (finding jurisdiction when defendant called into forum state).

- 14 -

This Court should follow the well-reasoned holdings of the district court in *Bradley* and the Seventh Circuit in *Bilek* and conclude that the Plaintiff has unquestionably pled a nexus between the conduct alleged, even if committed by a third-party, and the Plaintiff's injury sufficient for the imposition of personal jurisdiction. And with respect to the third and final prong, the Defendant has failed to make any showing that the exercise of jurisdiction on the facts of the case, as here, would be unreasonable. To the contrary, as the Seventh Circuit held in *Bilek*, the imposition of personal jurisdiction in cases such as this raises no due process concerns. As such, this Court should unquestionably hold that it enjoys personal jurisdiction over the Defendant. To the extent jurisdictional questions remain, this Court should permit this matter to proceed to discovery and reserve such questions for trial.

B. <u>The Plaintiff has adequately alleged a claim for vicarious liability, if not direct liability, for the conduct at issue.</u>

The Defendant's motion also misstates the Plaintiff's burden at the pleadings stage entirely to prove vicarious liability under the TCPA. Based on the facts pled in the notice-pleading of the Plaintiff's complaint, as further bolstered by additional evidence pled therein, it is fair for this Court to infer that Defendant is liable for the conduct alleged, including for actions it hired SunSCI and EDJ to make, to permit this matter to proceed to discovery. With the facts of agency not in its favor, Our World relies heavily on the provision in its initial contracts with SunSCI and EDJ that defined the relationship between the two parties as those of "independent contractors." Our World argues this provision alone means it can never be held liable under a classical agency theory for its telemarketers' actions. In other words, Our World asks this Court to forego the fact-intensive analysis of whether an agency relationship exists with SunSCI and EDJ and limit itself to its own self-serving description of the relationship.

- 15 -

However, as multiple courts have correctly found, in assessing whether or not an agency relationship exists, courts will look *beyond* such provisions and consider the *substance of the relationship*. RESTATEMENT (THIRD) OF AGENCY § 1.02; *Jackson v. Northstar Mortg., Inc.*, 645 F. Supp. 2d 636, 642 (W.D. Tenn. 2007); *Smith v. Vision Solar LLC*, No. CV 20-2185, 2022 WL 1172985, at *3 (E.D. Pa. Apr. 20, 2022); *Frey v. Frontier Utilities Ne. LLC*, No. CV 19-2372-KSM, 2020 WL 12697468, at *2 (E.D. Pa. Apr. 13, 2020) (holding vicarious liability turns not only on the language used in a contract between the parties but also on "the actual practice between the parties."); *Klein v. Com. Energy, Inc.*, 256 F.Supp.3d 563, 585 (W.D. Pa. 2017); s*ee also United States v. Dish Network L.L.C.*, 954 F.3d 970, 975 (7th Cir. 2020) (citing RESTATEMENT (THIRD) OF AGENCY § 1.02 for the proposition that "the parties cannot . . . negate agency if the relation the contract creates is substantively one of agency"); *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 877 (N.D. Ill. 2024); *Highline Cap. Corp. v. Ahdoot*, No. CIVA06CV02023EWNCBS, 2008 WL 486019, at *8 (D. Colo. Feb. 20, 2008) ("courts routinely find such disclaimers only weakly probative of whether such [agency] relationships in fact exist"); *Am. Home Mortg. Corp. v. First Am. Title Ins. Co.*, No. CIV.A.07-01257(JLL), 2007 WL 3349320, at *5 (D.N.J. Nov. 9, 2007) ("If courts routinely recognized disclaimers of agency, parties could conduct themselves as principal and agent without legal ramifications that accompany that special relationship.").

As will be explored in detail as to each of the elements of the Plaintiff's claims regarding agency as pled in the complaint, and as confirmed in the actual text of the contracts between Our World and SunSCI and EDJ, the relationship between the parties was unquestionably one of agency as confirmed under any one of the three generally applicable theories. And, as will also be explained below, none of the cases that the Defendant cites for a contrary position are at all

- 16 -

persuasive, let alone dispositive of the claims here. As several courts have held, requiring a putative TCPA plaintiff to allege more than basic facts giving rise to direct or vicarious liability, such as by pleading intricate details regarding the nature of the various players' relationship, as the Defendant seems to require, would eviscerate the TCPA's protection and would simply allow defendants to run rampant with all manner of illegal calls. As the Western District observed in *Cunningham*, the "defendants' argument," identical to the one here that more specificity as to the nature and details of an agency relationship was required at the pleadings stage, was "untenable." 2024 WL 3100773, at *13. It stated, "To require more would effectively immunize savvier TCPA violators from liability—i.e., those with the wherewithal and means to use middlemen— or a series of increasingly removed middlemen—to solicit business through prohibited robocalling operations. *Id.* "Defendants' argument, if tenable, would reward robocallers for attempting to obfuscate their identity in order to prevent TCPA liability." *Id.* (cleaned up).

The Defendant's standard provides a perverse incentive for a caller to escape liability under the TCPA by simply hiring middlemen to conduct their business while at the same time purportedly requiring those callers to abide by the TCPA. Luckily for consumers who receive unwanted calls, this is not the standard. At the very least, this Court should nevertheless conclude that the facts pled here give rise to the inference of some agency relationship and permit discovery. *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) ("Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery.").

Nor is this conclusion rendered at all different because some question exists as to whether EDJ and SunSCI are employees or "independent" contractors. The District of Maryland denied a similar motion in a TCPA case in *Jones v. Mutal of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 550

(D. Md. 2022) (cleaned up), holding:

> As noted, pursuant to Rule 12(b)(6), Mutual of Omaha contends that plaintiff fails to state a claim because she does not plausibly allege that defendant is either directly or vicariously liable for the calls at issue. Although Mutual of Omaha would not be directly liable for the calls, it may be vicariously liable if an agency relationship existed between the defendant and the third party. At this juncture, Mutual of Omaha's Motion turns on whether plaintiff has adequately alleged facts sufficient to support a claim of vicarious liability.
>
> Plaintiff has made a prima facie showing of an agency relationship based on actual authority . . . plaintiff has alleged that she received calls from an unidentified third-party telemarketer hired to sell branded products of another company who had control over the telemarketer's practices with respect to selling its products. Specifically, Jones alleges that the third party "was required to promote Mutual of Omaha's products[.]" Plaintiff also alleges that during the "solicitation", Mutual of Omaha's insurance services "were promoted." *Moreover, she was then transferred to Eric Chambers, who identified himself as an employee of Mutual of Omaha. Id.* ¶ 26. . . . . At the motion to dismiss stage, plaintiff need only make a prima facie showing of an agency relationship. Therefore, at this stage of the proceedings, Jones need not demonstrate that Mutual of Omaha actually controlled the manner and means of the telemarketing campaign; rather, evidence of Mutual of Omaha's "'*right* to control' the campaign will suffice." Viewing the allegations in the light most favorable to plaintiff, Jones has sufficiently alleged that Mutual of Omaha is vicariously liable based on an agency theory.

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification principles. *Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137, at *9 (W.D. Pa. June 29, 2016) (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016)); *see also In re Dish Network*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013). The existence of an agency relationship is a mixed question of law and fact that should generally be decided by a jury. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019) (affirming vicarious liability jury verdict).

An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01; *see also Krakauer*, 925 F.3d at 659-660 (stating

the same and citing the RESTATEMENT). "Once such a relationship is formed, 'traditional vicarious liability rules ordinarily make principals . . . vicariously liable for acts of their agents . . . in the scope of their authority.'" *Id.* at 660 (quoting *Meyer v. Holley*, 537 U.S. 280, 285-86 (2003)). "An essential element of agency is the principal's right to control the agent's actions", but this concept of control "embraces a wide spectrum of meanings", including "what the agent shall and shall not do, in specific or general terms." RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt f. "A principal's control over an agent will as a practical matter be incomplete because no agent is an automaton who mindlessly but perfectly executes commands." *Id.*

A plaintiff is required to allege a sufficient basis for any "one of the common law agency theories." *Cunningham v. Cap. Advance Sols., LLC*, No. CV 17-13050 (FLW), 2018 WL 6061405, at *6 (D.N.J. Nov. 20, 2018). "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) (citing *Dish Network*). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1059 (D. Colo. 2023). For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is *not expected* to allege "facts suggesting that" the defendant: (1) "instructed" the putative agent "to make the call to" the plaintiff, (2) "had any authority over the time, means and manner of" the putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects." *Dolemba*, 213 F. Supp. 3d at 997 ("But Farmers does not suggest how Dolemba could reasonably be expected to know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship . . . are exclusively within the Defendants' custody and control.").

- 19 -

Ultimately, in this case, Plaintiff pleads robust facts giving rise to an inference that Defendants are, if not actually, at least vicariously, liable for both of Plaintiff's calls based on all three vicarious liability theories.

**Actual Authority**

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." RESTATEMENT (THIRD) OF AGENCY § 2.01. Actual authority may be given expressly—such as when the principal states "in very specific or detailed language" how an agent is to act—or impliedly—such as when an agent acts "in a manner in which [the] agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." *Hayhurst v. Keller Williams Realty, Inc*., No. 1:19CV657, 2020 WL 4208046, at *5 (M.D.N.C. July 22, 2020) (denying motion to dismiss in TCPA vicarious liability case); *Rapid Response*, 251 F. Supp. 3d at 1199 ("The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business ….").

Actual agency "does not require the principal to specify the singular acts for which her or her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized." *John v. Keller Williams Realty, Inc.*, No. 619CV1347ORL40DCI, 2020 WL 10502631, at *2 (M.D. Fla. Feb. 4, 2020). "The concept of scope of authority is broad. An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives. The principal is liable for the acts of the agent to further the principal's purposes unless the agent acts entirely for the agent's benefit only."

- 20 -

*United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing RESTATEMENT (THIRD) OF AGENCY § 2.02(1)). Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant actual directed an agent's calls by alleging facts giving rise to an *inference* that the defendant was "involved" in the "sales practices and marketing procedures." *United States*, 256 F. Supp. at 922-923; *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery.").

Here, the Plaintiff has more than adequately pled facts giving rise to such an inference of actual authority based on explicit provisions contained in the contract between the Defendant and its marketing agents. To that end, this case is nothing like the cases cited by the Defendant holding that the plaintiffs therein inadequately pled actual authority. This Court can easily dispense with several of the cases cited by the Defendant in a footnote. *Worsham v. Direct Energy Servs., LLC*, is particularly off base as there, the plaintiff, *at summary judgment* "adduced no evidence linking those calls to Direct Energy" and attempted to impute to Direct Energy the "actions of [an] unknown caller." No. CV SAG-20-00193, 2021 WL 948819, at *3, *5 (D. Md. Mar. 12, 2021). *Worsham* also helps the plaintiff in that the court held that it "is undoubtedly true that . . . parties cannot simply avoid the legal obligations of agency by contracting out of them." *Id.* The court merely found that because the *pro se* plaintiff had not identified any of the third-party telemarketers involved with calling him, he had not identified any relationship between any parties and thus the court could not reach the part of the analysis where the court looks beyond a disclaimer in the contract. *Id.* Similarly, in *Winters v. Grand Caribbean Cruises Inc.*, the plaintiff attempted to impose liability for calls made by an "unspecified group of subsidiaries and/or agents" based upon "contradictory allegations," and

- 21 -

where the plaintiffs made no showing of the element of *control*, "which is a fundamental tenet of an agency relationship." 2021 WL 511217, at \*5-\*6 (D. Ariz. Feb. 11, 2021).

The two *Callier* cases cited by the Defendant are similarly distinguishable because the courts there held that there was no agency relationship when the nature of the callers was of a different ilk entirely. In *Wide Merchant*, for example, there was no requisite degree of control when the Defendant worked with multiple "independent sales organizations . . . to market its services and obtain referrals." *Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 744 (W.D. Tex. 2023). In turn, those ISOs were "independent brokers who will conduct and operate their own marketing campaigns" and, critically, decided *themselves* to whom to refer business from their independent marketing efforts. *Id.* That is plainly not the case here, where Defendant exercised a substantial degree of control over SunSCI and EDJ, including, *inter alia*, requiring them to comply with "any and all instructions and requests of OWE or its Representatives," reserving the right to "observe, inspect, shadow, or otherwise review" marketing efforts, requiring monthly meetings to discuss the progression of such marketing efforts, and obtaining a "first priority security interest" in the results of those efforts. (Am. Compl. ¶ 60, 59, 55, 57.)

So too in *SunPath*, where the plaintiff attempted to impose vicarious liability for the actions of unidentified telemarketing companies based entirely on conclusory allegations that the named defendants were "direct beneficiaries of the illegal telemarketing calls." *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at \*3 (W.D. Tex. Aug. 10, 2020). That conclusory allegation was contradicted by the uncontroverted assertion that the defendants maintained no "control or oversight over third-party marketing firms." *Id.* Those allegations are *directly* contrary to the very text of the parties' contract here, which *explicitly required* that Our World control the activities of its vendors, including requiring compliance with Our World's

- 22 -

code of conduct, and "any and all instructions and requests of OWE," including the ability to force vendors like EDJ and SunSCI to "cease any activity." (Am. Compl. ¶ 55, 61, 66.) One could hardly imagine such crisply distinct and opposite facts.

And contrary to the Defendant's attempts to liken this case to *Heller v. Marriott Vacations Worldwide Corp.*, actually end up helping the Plaintiff, not the Defendant. There, the court cited favorably to facts present in *Bradley*, *supra*, for why there was agency in that case, as well as here, including the fact that, "Cigna had the ability to direct or immediately suspend any third party from marketing, advertising, or promoting the discount plan." No. EP22CV00398FMMAT, 2023 WL 6702696, at *5 (W.D. Tex. Oct. 11, 2023); (Am. Compl. ¶ 60. (referencing paragraph including a provision that OWE could force vendors to comply with any instructions and cease activity.). And contrary to the Defendant's assertions here, the EDJ agreement *does* require a degree of exclusivity in giving a first-priority security interest, a lien under the UCC, in all "leads, prospective customers, [and] customer list[s]." (Am. Compl. ¶ 57.) And contrary to the Defendant's assertions, the contract *does* indicate that EDJ had to generate an acceptable degree of sales per month, requiring monthly performance assessments as to the progression of such efforts. (Am. Compl. ¶ 55.)

Defendant's attempts to distinguish the clear control they had over SunSCI and EDJ fare no better. Plaintiff here has pled several facts tending to show that the Defendant actually controlled SunSCI and EDJ, including by pointing to such clauses described above demonstrating control, particularly in the TCPA context. Defendant cherrypicks some of these allegations and points to inapposite cases from different statutes and holdings entirely, in a vain attempt to distinguish that the degree of control pled here is sufficient for TCPA purposes.

For example, in *Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 838 (S.D. Tex. 2008),

- 23 -

the court held that the maintenance of liability insurance (not the insurance here, which required OWE to be named as an insured), was insufficient, standing alone, to rebut the general legal principal that a physician is not the agent of the hospital of which they were affiliated. The medical context here matters, particularly as a doctor exercises substantial independent skill and judgement not present in a telemarketing relationship. *Id.* (discussing the fact that the hospital did not "set limits on or assert control over the physicians' medical work, judgment, or skill." Similarly, contrary to *Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083, 1102 (N.D. Cal. 2014), which dealt with a distinction between an employee and an independent contractor and did not even *address* agency, the court held that the obtaining of an *independent* license supported a finding that a party held himself out as a contractor, not an *employee*. The reverse is true here: EDJ and SunSCI were *permitted* and *required* to use OWE's *own* licenses and *not required* to obtain licenses of their own. (Am. Compl. ¶ 54. (citing provisions stating that "OWE holds a license," "OWE is qualified and licensed to do business and is in good standing in every jurisdiction where such qualification and licensing is required;" and that EDJ desired to obtain the benefit of that license, and that OWE "grant[s] the rights and licenses granted hereunder and thereunder and to perform its obligations under this Agreement.")).

The remainder of cases cited by the Defendant are likewise distinguishable, not least of which because *they do not even address the issue of agency*, but rather address the issue of whether parties are *employees* or independent contractors. The two are not coextensive with an agency analysis, as the independent contractor, principal-agent, and master-servant relationships are distinct; the status of an agent and independent contractor are not mutually exclusive. *Castle Cheese, Inc. v. MS Produce, Inc.*, No. CIV.A 04-878, 2008 WL 4372856, at *6, *7 (W.D. Pa. Sept. 19, 2008). An independent contractor can nevertheless be an agent of a principal. *Emtel*,

583 F. Supp. 2d at 837 ("Under a contract, a party may be both an agent and an independent contractor."). As such, for example, in *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 382 (5th Cir. 2019), though the provision of drug testing requirement did not render independent contractors' employees, the issue of agency *was not even addressed*, rendering Defendant's reliance on distinguishing independent contractors *vis-à-vis* employees unavailing.

And the Defendant's reliance on the Eleventh Circuit's holding in *Garcia-Celestino v. Ruiz Harvesting, Inc.*, is particularly inapposite because that case, an FLSA case in a migrant farm worker context, is actually *at odds with* TCPA specific case law regarding exclusive leads and an agency relationship. *Contra* 898 F.3d 1110, 1122 (11th Cir. 2018). Unlike in the FLSA context, in the TCPA context, exclusivity of a lead, let alone an enforceable security interest in the same, is one of the greatest hallmarks of agency there is. *In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6592 (2013) ("For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information."); *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, No. 1:13-MD-2493, 2019 WL 7835630, at *4 (N.D.W. Va. Apr. 3, 2019) (imposing vicarious liability when sub-vendor worked "exclusively" with defendant); *Dobkin v. Enter. Fin. Grp., Inc.*, No. 2:14-CV-01989 WHW, 2014 WL 4354070, at *4 (D.N.J. Sept. 3, 2014) (imposing vicarious liability when defendant engaged in a revenue sharing agreement with a call center).

Defendant's analysis of the law of agency with respect to actual authority misses the mark on both the facts and the law and as such this Court can easily conclude that the Plaintiff has plainly stated a claim for actual authority.

- 25 -

**Apparent Authority and Ratification**

Apparent authority "arises when a third-party reasonably believes that the [] agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011). Apparent authority can exist even where, unlike here, a principal does not communicate directly with a consumer. *See Hayhurst*, 2020 WL 4208046, at *5 ("Although Keller Williams is not alleged to have made any statements directly to Hayhurst, it is not required to do so. Rather, its manifestations must be 'traceable' to it even if it did not make them directly to Hayhurst. And, its manifestations 'may take many forms'.").

"Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent takes on the principal's behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016); Restatement (Third) of Agency § 4.01(1) (2006) cmt. d. ("Ratification does not require a pre-existing formal agency relationship."). "[R]atification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act. It is necessary that the actor have acted or purported to act on behalf of the ratifier." Restatement (Third) of Agency § 4.01 cmt. b; *see Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019) (citing the Restatement and holding in a TCPA action that "ratification may create an agency relationship when none existed before the acts are 'done by an actor … who is not an agent but pretends to be.'"). To demonstrate prospective ratification, a plaintiff must show that a principal had full knowledge of all the facts, *or* was willfully ignorant of those facts, and manifested an intention to ratify the act in question, *or* that an agent acted for a principal's benefit and the principal "fail[ed] to object or repudiate an action." *Henderson*, 918 F.3d at 1074-75; *Aranda*, 179 F. Supp. 3d at 831.

- 26 -

Here, Plaintiff sufficiently pleads Defendants' vicarious liability predicated on apparent authority and ratification theories based on the same allegations supporting direct liability and an actual authority theory. Specifically, the Plaintiff has pled that the Defendant knew that EDJ (and SunSCI) were using the Our World Energy brand, including by emailing EDJ at the email address "eric.worldenergy@gmail.com" (Am. Compl. ¶ 39, 25.) It is and was reasonable for Plaintiff to believe that Defendant authorized EDJ and SunSCI, based on their very own representations. Similarly, with regard to ratification, Defendants knowingly accepted the benefits of the illegal calls made to numbers on the National Do Not Call Registry. Defendant did not terminate EDJ or SunSCI, including upon the pendency of this litigation, and not only despite full notice of both entities' illegal conduct, but also evidence of evasion of service of process as to both. Defendant was directly involved in the calls by getting *exactly* what was intended from the calls—the opportunity for it (and not anybody else) to have its services promoted to potential new customers, like the Plaintiff. *See, e.g.*, *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp. 3d 817, 833 (N.D. Ill. 2016) (sellers ratified telemarketers' conduct by accepting the benefits of the unlawful calls in TCPA case); *Keim v. ADF Midatlantic, LLC,* 2015 WL 11713593, at *8 (S.D. Fl. 2015) (allegations sufficient to state a claim where seller accepted the benefits of the conduct by having text messages sent on its behalf to phone numbers obtained on its behalf); *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019) (holding a reasonable jury could find defendant liable on ratification theory where defendant accepted the benefits of an agents illegal calling conduct). As a result, Plaintiff sufficiently alleges Defendant's vicarious liability based on apparent authority and ratification based on manifestations traceable to and benefits derived by Defendant.

- 27 -

C.  <u>The Defendant's 12(b)(6) motion, which is couched in its denial of vicarious liability, fares no better.</u>

Defendant's Motion to Dismiss under Rule 12(b)(6) is couched in its general denial of vicarious liability. It fares no better. As discussed, the TCPA permits a plaintiff to proceed on a theory of vicarious liability against a Defendant who calls illegally. The Plaintiff is not required to prove that the Defendant owned or operated any of the telephone numbers or made the calls itself; it is merely sufficient that the calls were placed under a generally applicable theory of vicarious liability. *Klein*, 2016 WL 3539137, at *9. The other cases cited by Defendant here are similarly from distinguishable from this case. In *Katz v. Caliber Home Loans, Inc.*, the plaintiff did not even *attempt* to prove an agency theory, but instead proceeded on direct liability by alleging that the caller *directly* made the calls at issue. Plaintiff's sole evidence for direct liability in that case was premised on the *caller's* assertion that they were calling from the "Caliber Home Loan Mortgage Refinance Team," unlike here, where an *investigation* revealed evidence of an agency relationship, together with associated payment records. No. 3:23-CV-0145-S, 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023). This case is also unlike *Hunsinger v. Dynata LLC*, where the plaintiff made the formulaic, conclusory allegation that the caller was "an agent for Dynata." No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *6 (N.D. Tex. Feb. 7, 2023).

Taking all factual inferences in the Plaintiff's favor, as the Court must do now, the Plaintiff's allegations are sufficient to give rise to the inference that the calls were placed to sell Defendant's goods and services. For example, in *Stemke v. Marc Jones Constr., LLC*, No. 5:21-CV-274-30PRL, 2021 WL 4340424, at *2–3 (M.D. Fla. Sept. 23, 2021), a sister court stated in a case on all fours and admittedly weaker facts than this one:

> Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls. . . For example, Sunpro argues that Plaintiff fails to

"support" a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument— Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls. To the extent Sunpro disputes that it directly placed the calls, Sunpro may take discovery on this matter and argue the issue at the dispositive motion stage.

As Judge St. Eve, prior to being appointed by President Trump to the Seventh Circuit Court of

Appeals, held in a TCPA case denying a similar motion to dismiss:

> Sempris does not dispute that Quality initiated four calls to Toney in December 2012, but contends that Toney "cannot plausibly allege that the three unanswered calls she purportedly received were initiated by Quality for the purpose of marketing Sempris's Budget Savers membership program, because Toney does not allege--and cannot allege-- that she has any personal knowledge of what the content of those calls would have been." . . . Sempris submits that Quality "just as easily could have been calling Toney to market the goods or services of another company it contracts with, for the exclusive purpose of confirming Toney's Stompeez order, or for a different purpose altogether" and that "Toney's assertion that that Quality made the three unanswered calls for the purpose of marketing Budget Savers is nothing more than rank speculation." The court disagrees. Toney has alleged that she received and answered a call from Quality in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from Quality. The content and timing of the fourth call allows the court to draw a reasonable inference that Quality made the first three calls to market Sempris's services.

*Toney*, 75 F. Supp. 3d at 746 (N.D. Ill. 2014) (cleaned up). The same reasonable

inferences can be made here and other courts have held the same. *See also Moore v. Healthcare*

*Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022) ("Moore

acknowledges that he never spoke with anyone — including anyone from Healthcare Solutions

— during the first call. That said, he points out that both calls came from the same number, on

the same day. So, it is reasonable to assume that the same caller made both calls for the same

reason.")

**CONCLUSION**

The Motion should be denied.

- 29 -

RESPECTFULLY SUBMITTED AND DATED March 4, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com


*Attorney for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2025, a copy of the foregoing was served electronically on counsel for the Defendants via the ECF system, which will send a copy to all counsel of record.


*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com


*Attorney for Plaintiff*